David BROWN, Petitioner-Appellant,

v.

E.P. PERINI; William Brown, Attorney
General of Ohio,
Respondents-Appellees.

No. 82–3360.

United States Court of Appeals,
Sixth Circuit.

Argued May 3, 1983.

Decided Oct. 5, 1983.

Gordon S. Friedman, argued, Friedman, Gilbert, Berezin & Sheehan, Cleveland, Ohio, for petitioner-appellant.

Dain Devaney, Asst. Atty. Gen., Connie Harris, argued, Columbus, Ohio, for respondents-appellees.

Before KEITH and JONES, Circuit Judges, and TAYLOR, District Judge.*

KEITH, Circuit Judge.

The petitioner, David Brown, appeals from the district court's denial of habeas corpus relief from a conviction on two counts of aggravated murder. The thrust of his claim for relief is that he was denied federal due process by being affirmatively misinformed of his parole eligibility date. We conclude, however, that the petitioner's guilty plea is not invalidated by the trial judge's inaccurate statement regarding parole limitations. Therefore, upon the facts of this case, we hold that the petitioner's guilty plea comports with the requisites of due process, and that collateral relief is unwarranted.

I.

The petitioner was indicted in September of 1975 by the Cuyahoga County Grand Jury on four counts of aggravated murder and one count of aggravated arson. The murder counts were returned with specifications which permitted the possible imposition of the death penalty upon conviction. All of the charges resulted from a restaurant fire bombing which was apparently precipitated by gasoline.

The petitioner retained an accomplished criminal defense attorney who represented

* Hon. Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation.

him throughout plea negotiations. A possible plea bargain was discussed which involved a plea to two counts of aggravated murder with the specifications removed. The petitioner was informed that the prescribed sentence for aggravated murder is life imprisonment. There was, however, some confusion regarding parole eligibility. The confusion arose as a result of Ohio's recently promulgated revised penal code. The relevant portion of the code had not yet been judicially interpreted. Trial counsel was of the opinion that the new code provided for parole eligibility in ten years for the crime of aggravated murder. But counsel was aware, and so advised the petitioner, that other colleagues believed the fifteen-year eligibility requirement was applicable.

According to the petitioner, the trial judge was aware of the debate. The judge allegedly expressed the opinion, off-the-record, that based upon a legislative service statement the petitioner would be eligible for parole in ten years.

After conferring with his attorney, the petitioner entered a guilty plea on two counts of aggravated murder. Pursuant to the agreement, the specifications were deleted from the murder counts, thereby precluding the imposition of the death penalty. Consequently, he was sentenced to two concurrent terms of life imprisonment, and the remaining counts were dismissed. At the time the petitioner entered the guilty plea he knew that a co-defendant was prepared to turn state's evidence. He was also aware that a gasoline attendant was prepared to identify the petitioner as having purchased gasoline from him on the night of the fire. This potential testimony coupled with a possible death penalty undoubtedly influenced the petitioner's decision to plead guilty.

Following his sentencing, the petitioner was immediately incarcerated in a correctional institution in Ohio. Shortly after his arrival, he was advised by prison authorities that he would not be eligible for parole until he served fifteen years of his sentence.

Three years later on November 6, 1978, the petitioner filed a motion for post conviction relief, challenging his guilty pleas. The Cuyahoga County Common Pleas Court denied relief on May 21, 1979. The order denying relief was affirmed by the Court of Appeals of Cuyahoga County, and the Ohio Supreme Court denied jurisdiction.

On December 10, 1980, the appellant filed a writ of habeas corpus in the United States District Court for the Northern District of Ohio, pursuant to 28 U.S.C. § 2254. The case was referred to a magistrate, who held an evidentiary hearing on September 15, 1981. The appellant and trial counsel testified at the hearing. Thereafter, the magistrate filed a report and recommendation in which he concluded that a writ of habeas corpus should be issued. Specifically, the magistrate found that the appellant's guilty plea was not knowingly and intelligently made because he had been misinformed about his parole eligibility date. The magistrate found that at the time the defendant entered his guilty plea he thought he would be eligible for parole in ten years when, in fact, he would not be eligible until he had served fifteen years of his sentence. The government filed objections to the magistrate's report and recommendation.

In a February 8, 1981 order, the district court rejected the report and recommendation of the magistrate. The court refused to accept the magistrate's finding that the guilty plea was premised upon the defendant's belief that he would be eligible for parole in ten years. Upon its own review of the record the court determined that the defendant would have pled guilty regardless of the misinformation he received. Hence the writ was denied. The appellant then filed a motion for reconsideration, arguing that the court's reversal of the magistrate's factual findings without further evidentiary hearings constituted a violation of due process. The motion to reconsider was granted. However, the court again denied relief without further hearings by finding that the misinformation was insufficient as a matter of law to render the guilty plea involuntary.

## II.

On appeal our inquiry is limited to whether the petitioner's guilty plea comports with the requirements of due process. Essentially, the petitioner argues that his pleas were involuntary because they were based on misinformation supplied by his defense counsel and the trial judge. He contends that he would not have accepted the plea offers had he known his parole eligibility commenced in fifteen years as opposed to ten years.

The applicable standard for determining the validity of guilty pleas was set forth in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). There the Supreme Court held that a guilty plea is only valid if it is both "voluntary" and "intelligent." *Boykin* also required that the record affirmatively disclose that the defendant's waiver of his constitutional rights meets federal standards. As the Court explained, a plea involves the simultaneous waiver of several constitutional rights, including, the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. "For this waiver to be valid under the Due Process Clause, it must be an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1073, 82 L.Ed. 1461 (1938). Implicit in these established requirements is the recognition that a plea of guilty is more than a confession; it is itself a conviction. *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1926). Hence, the Court declared that a guilty plea violates due process and is therefore void if it is not equally voluntary and knowing. *Johnson,* 304 U.S. at 466, 58 S.Ct. at 1023.

Later, in *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970) the following guideline was established for evaluating the voluntariness of a plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless in-

duced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970), *citing Shelton v. United States,* 246 F.2d 571, 572 n. 2 (5th Cir.1957). Thus, it is clear that the voluntariness of a plea can be determined only by considering all the relevant surrounding circumstances. *Brady,* 397 U.S. at 749, 90 S.Ct. at 1469.

■ Under the standards articulated by the Supreme Court, a plea of guilty is not invalid merely because it is entered to avoid the possibility of a death penalty. *Id.* at 755, 90 S.Ct. at 1472. In fact, it is well recognized that the decision to plead guilty is often heavily influenced by the defendant's appraisal of the prosecution's case against him and the likelihood of securing leniency through a plea bargain. *See Brady,* 397 U.S. at 756, 90 S.Ct. at 1473. In this regard the Supreme Court noted:

> Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

*Id.* at 756–57, 90 S.Ct. at 1473.

The record in this case reveals that the appellant pled guilty after learning that a co-defendant was prepared to turn state's evidence against him, and that a gasoline attendant was prepared to identify the appellant as having purchased gasoline on the

night of the fire. Moreover, the appellant was aware that the death penalty was ever present if he proceeded and was convicted. The government argues that it was the potential imposition of the death penalty that convinced the appellant to enter a guilty plea and not the parole eligibility date. In support of this position, the government notes that the appellant became aware of the fifteen-year parole requirement immediately following incarceration, yet he waited three years before filing his petition. The three-year wait is significant because the Supreme Court declared Ohio's death penalty unconstitutional during this period. *See Bell v. Ohio*, 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978); and *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Thus, it appears that the appellant filed his petition only after he was assured that the death penalty could no longer be imposed.[1] The government argues that the surrounding circumstances indicate that the prime motivating factor in his decision to plead guilty was his desire to avoid the death penalty rather than his possible parole eligibility. Though the government's theory is credible, we need not resolve this factual dispute. Our concern is simply whether the plea represents a voluntary and intelligent choice given the alternative courses of action open to the petitioner. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

In order to determine the voluntariness of the petitioner's plea, we must turn to the state court record. The transcript reveals that during the course of the proceedings, the court questioned the petitioner regarding his understanding of the consequences of a guilty plea and the voluntary nature of his plea. He was clearly advised that by pleading guilty he was waiving his right to trial, his right to confront witnesses and his right to present evidence on his own behalf. The petitioner was also informed of the consequences of his plea. The following colloquy is illustrative:

> THE COURT: Mr. Brown, the Prosecutor is suggesting and your counsel is recommending that you plead guilty to two counts of aggravated murder; that the balance of the counts in the indictment be nolled or dismissed. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You understand the penalty for aggravated murder, Mr. Brown, is incumbent upon the Judge, mandatory upon the Judge to sentence you to the penitentiary for life? Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Mr. Brown, you are under no obligation to plead guilty. If you wish, you may maintain your plea of innocence as to all of these charges ... You understand that?
>
> THE DEFENDANT: Yes, sir.
>
>      \*     \*     \*     \*     \*     \*
>
> THE COURT: And with reference to the penalty that we have to discuss a few moments ago, Mr. Brown, nobody's promised you anything; you appreciate I have to impose the penalty in this case. It is a question of my discretion. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

As the above conversation reveals, the petitioner understood that there was a mandatory sentence of life imprisonment for the crime he committed, and that no promises had been made to him concerning parole.[2]

---

1. The petitioner testified that the three year delay was occasioned by his desire not to create additional adverse publicity. He explained that his family had suffered tremendously as a result of the publicity following the fire. He did not want to generate further publicity by attacking his guilty plea shortly after his conviction. Defense counsel also testified that he advised the petitioner to delay bringing his petition because the parole board tended to vacillate and there was a possibility that it might change its mind.

2. The Court of Appeals of Ohio, Eighth District, found that the petitioner's plea of guilty was entered after the trial court fully complied with Ohio Crim.R. 11(C). That rule requires the court to initiate an oral dialogue with the defendant in order to probe the defendant's understanding of the consequences of his plea. It is important to note that this Circuit has

In subsequent proceedings it was further determined that neither the defense counsel nor the trial court had promised the petitioner that he would be paroled in ten years. The petitioner was certainly aware that he could spend the rest of his life in prison if he did not make parole. The petitioner was additionally aware that the trial court had no control over whether appellant would be placed on parole. Based upon these facts, we find that the petitioner's plea was the product of free will. There were no threats or promises made which would invalidate the plea under the *Brady* standard.[3]

We further conclude, based upon the record below, that the petitioner's plea was intelligently made. Consistent with the *Brady* standard, the petitioner was advised by competent counsel; he was made aware of the nature of the charge against him; and there was nothing to indicate he was incompetent or otherwise not in control of his mental faculties. 397 U.S. at 756, 90 S.Ct. at 1473. In fact, given the alternatives available to the petitioner, he made a wise choice.

■ Ultimately, the case rests upon whether the petitioner was aware of all the direct consequences of his guilty plea. He certainly understood that the mandatory sentence for aggravated murder was life imprisonment. However, he claims that his plea is vitiated by the misinformation regarding parole. We must reject this claim.

This Circuit has expressly declined to consider parole eligibility a direct consequence of a guilty plea. *Armstrong v. Egeler,* 563 F.2d 796 (6th Cir.1977). In *Armstrong,* this Court considered a state prisoner's claim that his constitutional right to due process had been violated when the trial judge failed to inform him that one of the consequences of his plea to an offense requiring a sentence of life imprisonment was parole ineligibility. In denying relief, we concluded that the plea had not been rendered constitutionally defective by the court's omission. The Court stated:

> We recognize that dicta in *Cuthrell,* 475 F.2d at 1366, tend to indicate that ineligibility for parole is a 'direct' as opposed to 'collateral' consequence of a guilty plea requiring advice to the defendant. *We decline however to endorse the dicta as a constitutional requirement in this circuit* (Emphasis added).

*Armstrong,* 563 F.2d at 800. Several other circuits have held that due process does not require that a defendant be advised regarding parole consequences. *See, e.g., United States v. Garcia,* 636 F.2d 122, 123 (5th Cir.1981) (per curiam); *Hunter v. Fogg,* 616 F.2d 55, 61 (2d Cir.1980); *Strader v. Garrison,* 611 F.2d 61, 63 (4th Cir.1979).[4] These

---

expressly held that Fed.R.Crim.P. 11(c) does not apply to state court proceedings. *See Armstrong v. Egeler,* 563 F.2d 796 (6th Cir.1977); *Roddy v. Black,* 516 F.2d 1380, 1383 (6th Cir.), *cert. denied,* 423 U.S. 917, 96 S.Ct. 226, 46 L.Ed.2d 147 (1975). Under the federal rule the defendant must be informed of the mandatory minimum penalty provided by the law. Fed.R. Crim.P. 11(c)(1).

3. We agree with the district court's finding that the question of misrepresentation does not arise under this factual situation. There is no allegation that defense counsel or the trial judge ever promised the petitioner that he would be eligible for parole in ten years.

4. In *Strader v. Garrison,* 611 F.2d 61, 63 (4th Cir.1979) the court stated the following:

> The imposition of a sentence or sentences may have a number of collateral consequences, and a plea of guilty is not rendered involuntary in a constitutional sense if the defendant is not informed of all of the possible indirect and collateral consequences. Ordinarily, parole eligibility is such an indirect and collateral consequence, of which a defendant need not be specifically advised by the court or counsel before entering a plea of guilty.

With this in mind, the *Strader* court reviewed the guilty plea of a defendant who had relied upon misinformation provided by his attorney that his new sentence would not affect his parole eligibility date on an earlier conviction. Later, the defendant learned that the plea, in fact, had a substantial impact upon his parole eligibility. In vacating the conviction the court stated:

> When the misadvice of the lawyer is so gross as to amount to a denial of the constitutional right to the effective assistance of counsel, leading the defendant to enter an improvident plea, striking the sentence and permitting a withdrawal of the plea seems only a necessary consequence of the deprivation of the right to counsel.

circuits appear to agree that parole is not a direct consequence within the meaning of *Brady*.

We are, therefore, constrained by this Court's pronouncement in *Armstrong*. In light of the peculiar facts in this case, misinformation concerning the collateral consequences of the petitioner's guilty pleas does not constitute a violation of due process and therefore does not void his guilty plea.

Accordingly, we affirm the order of the Honorable Frank J. Battisti, of the Northern District of Ohio, denying habeas corpus relief.

Hence, *Strader* is distinguishable from the present case in that it was based upon a finding of ineffective assistance of counsel. The petitioner in the present action does not challenge the competency of his attorney. Nor can the advice rendered by the defense attorney below be characterized as "gross misadvice."