IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 7, 2003

## RICCO SAINE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-23556     W. Otis Higgs, Judge**

---

**No. W2002-02805-CCA-R3-PC  - Filed March 15, 2004**

---

Aggrieved that the lower court denied post-conviction relief following an evidentiary hearing, the petitioner, Ricco Saine, appeals and claims that his aggravated burglary conviction resulted from ineffective assistance of counsel and an involuntary guilty plea.  We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Jake Erwin, Memphis, Tennessee, for the Appellant, Ricco Saine.

Paul G. Summers, Attorney General & Reporter; Brent C. Cherry, Assistant Attorney General; William L. Gibbons, District Attorney General; and Greg Gullily, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

The petitioner pleaded guilty on October 11, 1999, to three counts of aggravated robbery involving different victims, *see* Tenn. Code Ann § 39-13-402 (2003), one count of assault, *see id*. § 39-13-101 (2003), and one count of aggravated burglary, *see id*. § 39-14-403 (2003).

At the plea submission, the state recited the following factual basis for the charges:

Facts that give rise to [the aggravated robbery charges] are
that on Monday, November the 9th, 1998, approximately 12:30 p.m.,
an individual later identified as [the petitioner] entered the Chip N'
Dale's Antiques located at 3457 Sumner.

He pulled a silver pistol; demanded money from the clerk, Joan Hill, an employee; took approximately 510 dollars and fled in a small, maroon compact car.

On November 12th, 1998, approximately 10:50 a.m., another individual later identified as [the petitioner] entered the Fun Shop located at 634 South Highland; pulled a handgun; pointed it at the clerk, Larry Tracy; demanded the money; received about 80 dollars from the cash register; and again, fled in a small, maroon compact car.

On Monday, November the 16th, 1998, approximately 3:15 p.m., an individual later identified as [the petitioner] came into the Buckley's Antique located at 1965 Madison; pulled a small silver pistol; demanded money; received approximately 30 dollars from the clerk, Mr. Buckley; and fled in a maroon compact car.

On this occasion the victim got the identification of the vehicle through Mississippi tag PNY-137, which led officers in their investigation to [the petitioner]. [The petitioner] was displayed in a photographic display to the victims, and they were able to identify him.

Facts that give rise to [the assault charge] are that on, it looks like, October 31st, 1998, on-patrol officers were called to the area of Lamar and Sims and observed [the petitioner] on the lot there at 3020 Lamar shoving the complainant, who apparently was his girlfriend, that being a Macon (spelled phonetically) Robinson. They detained him and arrested him for assault on that occasion.

The facts that give rise to [the aggravated burglary charge] are that on October the 30th, 1998, a Candace Mosley reported to the Memphis Police Department that her home at 2834 Roger Road, No. 2, had been broken into sometime between 5:30 a.m. and 4:20 p.m. Taken in the break-in was a Yamaha keyboard.

Officers with the pawn shop detail were able to trace the pawning of that Yamaha keyboard, obtained the print off of the pawn ticket and traced that to [the petitioner]. [The petitioner] stated that he did pawn the keyboard, but he didn't break into the apartment, but he was charged.

In asking the trial court to accept the plea, counsel for the petitioner advised the trial court that the petitioner had been receiving medication since his detention on the charges and that the petitioner had been mentally evaluated and found competent. Counsel further informed the trial court that the petitioner denied his involvement in the assault charge but, nevertheless, wanted to plead guilty. After personally addressing the petitioner and reviewing with the petitioner his rights, the trial court accepted his guilty plea. The court sentenced the petitioner to ten years for each aggravated robbery conviction, to five years for the aggravated burglary conviction, and to eleven months and twenty-nine days for the assault conviction. The robbery and assault sentences were ordered to be served concurrently, with the aggravated burglary to be served consecutively for an effective fifteen-year sentence.

Approximately eight months later, the petitioner filed a *pro se* petition for post-conviction relief claiming multiple grounds for relief, including that his guilty pleas were involuntarily entered and unlawfully induced. With the assistance of appointed counsel, the petitioner filed an amended petition, claiming that his pleas were involuntary because he was improperly advised by former counsel, that he did not receive effective assistance of counsel, and that the plea submission hearing did not comply with procedural and constitutional requirements.

The post-conviction court conducted a hearing on the petition on January 11, 2001, at which time the petitioner and former counsel testified. The petitioner's counsel announced at the beginning of the hearing that the petitioner was attacking only his plea on the aggravated burglary charge. The petitioner testified that when he pleaded guilty he was "going through a mental thing" and that he was "messed up" because he was being given the wrong medication. For those reasons, the petitioner said that he did not understand what he was doing at the time.

In connection with the aggravated burglary charge, the petitioner claimed that his former girlfriend reported the offense because she was upset with him. The petitioner insisted that, if the girlfriend could be brought to court, she would deny that the petitioner broke into her house. According to the petitioner, because of the medication he was taking, he neglected to tell former counsel about the girlfriend.

Responding to the post-conviction court's questions about the type of medication, the petitioner testified that he had been taking Thorzine since he was fourteen years old and also took medication to calm him and help him sleep. Responding to additional questions by the court, the petitioner maintained that he understood everything that occurred during the plea submission, except the aggravated burglary charge. For that charge, the petitioner said that he did not tell his attorney that he wanted to plead guilty. In terms of trial counsel's services, the petitioner said that counsel did not explain the aggravated burglary to him and that they never discussed that charge. More specifically, the petitioner claimed that he was not made aware of the facts alleged concerning the aggravated burglary and that he would not have pleaded guilty had he been aware.

On cross-examination, the petitioner conceded that despite his "mental" problems, he had been able to knowingly enter guilty pleas to prior offenses, such as theft, criminal trespass, assault, and driving without a license.

The petitioner's former trial counsel testified for the state that she is the Criminal Court Supervisor for the Shelby County Public Defender's Office. She supervises approximately 30 attorneys and handles a reduced case load. Counsel stated that she has been licensed to practice law in Tennessee for 20 years.

Originally, counsel was appointed to represent the petitioner on the aggravated robberies, but she monitored his other charges that were being handled by different public defenders at the General Sessions Court level. Counsel testified that when she initially met with the petitioner, he advised her of his mental health history. As a result, counsel arranged for an in-patient mental evaluation. Pursuant thereto, the petitioner was diagnosed as competent and sane.

Counsel testified that the petitioner wanted a joint disposition of his cases. Counsel said that she reviewed the facts of each case with the petitioner and discussed possible defenses. Counsel related that the petitioner did not contest the robbery charges. He also did not contest that he had "pawned" Ms. Mosley's property, but he did insist that he had not broken into Ms. Mosley's house. Counsel did not contact Ms. Mosley, and to counsel's knowledge, her office staff did not interview Ms. Mosley. Counsel testified that she explained to the petitioner how the possession of recently stolen property creates an inference of burglary, and she testified that she advised the petitioner that "there was a good chance he could be convicted of burglary." In terms of punishment, counsel said that she told the petitioner that if convicted at trial, he could receive more than 30 years' incarceration depending on whether consecutive sentencing was imposed.

Counsel admitted that she was aware that the petitioner denied the assault charge and breaking into Ms. Mosley's residence. Counsel testified that she told the petitioner that he could not be forced to plead guilty to those charges but that "in all likelihood the state would not give him an offer just to cover the aggravated robberies." Before the plea submission, counsel reviewed the paperwork with the petitioner, which clearly reflected that he was pleading guilty to aggravated burglary.

The post-conviction court took the matter under advisement and later issued written findings and conclusions denying the petition for post-conviction relief. The court found the petitioner's claim of ineffective assistance of counsel to be without merit. The court credited trial counsel's testimony, and it concluded that the services provided to the petitioner were within the range of competence expected of attorneys in criminal cases and, moreover, that the petitioner was not prejudiced by his attorney's representation. Regarding the petitioner's claim that his guilty plea to the aggravated burglary was involuntary and unknowing, the post-conviction court ruled that the petitioner had not carried his burden. The court pointed, *inter alia*, to the mental health evaluation whereby the petitioner was found competent, the petitioner's responses during the plea submission hearing, and the petitioner's post-conviction testimony that he read at a tenth grade level. The court

also noted that the probable motivation for the petitioner's claims was that the petitioner would be already eligible for parole but for the aggravated burglary sentence running consecutively to the robbery sentences.

From the denial of his bid for post-conviction relief, the petitioner has appealed.[1]

The law is well settled that to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. *Id*. § 40-30-110(f) (2003). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Once the court assigned to hear and adjudicate the post-conviction petition has ruled, its factual findings are subject to a *de novo* review by this court; however, we must accord those factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001). A reviewing court, in other words, may not re-weigh or re-evaluate these findings, may not substitute its inferences for those of the post-conviction court, and may not second-guess questions concerning the credibility of witnesses and the weight and value of their testimony. *See Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The burden is on the petitioner to show that the evidence preponderates against the lower court's findings. *See Clenny v. State*, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). On the other hand, a post-conviction court's conclusions of law are subject to a purely *de novo* review by this court, with no presumption of correctness. *Fields*, 40 S.W.3d at 457.

**Ineffective Assistance of Counsel**

The petitioner's ineffective assistance of counsel claim is grounded in the requirements of the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution that an accused in a criminal case receive effective assistance of counsel. *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975). To obtain post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of proving (1) that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal

---

[1] From the record, it appears undisputed that the November 7, 2001 order denying post-conviction relief was not transmitted by the clerk of court to either the petitioner or his post-conviction counsel until after the time to appeal had expired. The petitioner filed a motion asking the post-conviction court to "enter an Order on Findings of Fact and allow [him] to make an application for a delayed appeal." An Order was entered on October 29, 2002, which recited that "Petitioner's Motion on Findings of Facts is hereby granted." Pursuant to the petitioner's motion filed with the clerk of the appellate court, our court then entered an order on December 4, 2002, granting the petitioner fifteen days to file a notice of appeal with the lower court. He did so on December 12, 2002.

cases," *id*. at 936, and (2) that the deficiencies were prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings were fundamentally unfair, *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim[, and] a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

In terms of appellate review, a post-conviction court's conclusion whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The post-conviction court's findings of fact underlying a claim of ineffective assistance are reviewed under a *de novo* standard, with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. *See Fields*, 40 S.W.3d at 458. The post-conviction court's conclusions of law whether counsel's performance was deficient or whether any such deficiency was prejudicial are reviewed under a purely *de novo* standard with no presumption of correctness.

Our review of the petitioner's appellate brief discloses only two references to the record on appeal, pages 8 and 14 of the post-conviction hearing transcript. Rule 10 of the Court of Criminal Appeals of Tennessee provides that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived." R. Ct. Crim. App. Tenn. 10(b). Viewed in the best possible light, the petitioner's brief is marginally adequate. At any rate, we discern no factual or legal grounds to disturb the lower court's assessment of counsel's effectiveness.

The only route of persuasion that the petitioner beckons us to take amounts to nothing more than an attack on the post-conviction court's credibility determinations. However, the post-conviction court heard and considered firsthand the testimony of the petitioner and former counsel. The petitioner does not explain how the evidence preponderates against the court's demeanor and credibility assessments.

From the testimony of trial counsel, it is evident that she conscientiously, professionally, and zealously represented the petitioner. Trial counsel obviously appreciated the gravity of the charges that the petitioner was facing. Trial counsel obtained professional assistance in evaluating the petitioner's competency and mental health. Following that evaluation, trial counsel then attempted to negotiate a favorable, global settlement of the multiple charges brought against the petitioner, which could easily have resulted in an effective sentence in excess of 30 years. We detect no suggestion that counsel improperly influenced the petitioner to plead guilty to the aggravated burglary. Quite to the contrary, counsel advised the petitioner that nothing required him to plead guilty to that offense; in that event, however, and in counsel's considerable experience, the state would not be willing to settle the other charges. Trial counsel also offered the petitioner a practical insight about the aggravated burglary charge based on the legal inference that arises from the possession of recently stolen property.

Not only was counsel's performance objectively reasonable, it also benefitted the petitioner. In other words, it certainly did not prejudice the petitioner, as is required to secure post-conviction relief on an ineffective assistance claim. The negotiated plea agreement for an effective sentence of fifteen years was highly favorable under the circumstances, particularly considering the petitioner's proven propensity to rob commercial establishments at gunpoint.

Simply stated, the petitioner is entitled to no relief on this claim, and we affirm the post-conviction court's disposition.

### Involuntary Guilty Plea

The petitioner's claim that his decision to plead guilty to aggravated burglary was not intelligently and voluntarily made is, likewise, unavailing.

When reviewing the entry of a guilty plea, the overriding concern is whether the plea is knowingly, voluntarily, and understandingly made. *Boykin v. Alabama*, 395 U.S. 238, 242-44, 89 S. Ct. 1709, 1712 (1969). "[A] plea is not 'voluntary' if it is the product of 'ignorance, in-comprehension, coercion, terror, inducements, [or] subtle or blatant threats. . . .'" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43, 89 S. Ct. at 1712)). Moreover, a plea cannot be voluntary if the defendant is "incompetent or otherwise not in control of his mental facilities" at the time it is entered. *Id*. at 904-05 (quoting *Brown v. Perini*, 718 F.2d 784, 788 (6th Cir. 1983)). A defendant's plea of guilty is not constitutionally infirm or coerced merely because the defendant opted to plead guilty as a means of avoiding a more severe sentence following a trial. *See, e.g., Brady v. United States*, 397 U.S. 742, 751, 90 S. Ct. 1463, 1471 (1970).

The post-conviction court, as was its prerogative, declined to accredit the petitioner's argument that his medication selectively interfered with his ability to understand the nature of his plea to the aggravated burglary charge. His repetition of that argument on appeal gains no force. Nothing irregular occurred during the plea submission, and there is no evidence, independent of the petitioner's assertion, that he did not understand the court's questions about the aggravated burglary offense or other particulars of his guilty pleas. This claim fails.

### Conclusion

Consequently, for all the foregoing reasons, we affirm the denial of post-conviction relief.

_____
JAMES CURWOOD WITT, JR., JUDGE