# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 9, 2013

## DONALD SMITH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 10-02085-90      Lee V. Coffee, Judge**

---

**No. W2012-01084-CCA-R3-PC  -  Filed September 30, 2013**

---

The Petitioner, Donald Smith, contends that his guilty plea was not knowingly and intelligently entered because he was not coherent at the hearing due to mental incapacities and that trial counsel was deficient for failing to request a mental evaluation. After considering the record and the relevant authorities, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and JEFFREY S. BIVINS, JJ., joined.

James P. DeRossitt, IV, Memphis, Tennessee, for the appellant, Donald Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Greg Gilbert, Assistant District Attorney General; State of Tennessee.

## OPINION
FACTUAL BACKGROUND

Six separate indictments for the sale, possession, and delivery of cocaine, Class C felonies, were issued against the Petitioner on March 30, 2010. Pursuant to a plea agreement, the Petitioner pleaded guilty on October 27, 2010, to six counts of the sale of cocaine and received concurrent ten-year sentences on each count, for an effective ten-year sentence. As a part of the plea agreement, the Petitioner agreed not to seek any form of probation or alternative sentence. The proffered factual basis for the plea was as follows:

[H]ad the cases gone to trial, the proof would have been that all of these crimes

occurred here in Memphis and Shelby County, before the finding of these indictments on the dates alleged in the indictment. The defendant met with an undercover law enforcement officer and sold that undercover officer a substance that later field tested positive for cocaine. It weighed under five tenths of a gram in each [of the six] case[s]; and it was delivered to the undercover officer in exchange for money.

The Petitioner filed a pro se petition for post conviction relief on November 4, 2011, alleging that he had newly discovered evidence that he was suffering from a mental illness at the time he entered his guilty plea, rendering it unlawful, and that he received the ineffective assistance of counsel. Counsel was appointed, and an amended petition was filed on January 23, 2012, reiterating the claims alleged in the pro se petition. An evidentiary hearing was held on February 22, 2012. The following evidence was presented.

The Petitioner testified that after retaining trial counsel, he asked trial counsel to file some motions, but trial counsel never filed any. The Petitioner stated that trial counsel never explored his mental condition, despite asking trial counsel to have him undergo a competency evaluation, and that he was later diagnosed with bi-polar manic depressive disorder.   The Petitioner testified that he tried to contact trial counsel numerous times over the phone but that trial counsel was always too busy and never had time to speak with him. According to the Petitioner, trial counsel visited him about three times while he was incarcerated and every time prior to court appearances: he had approximately fifteen to twenty court dates.   The Petitioner relayed that he had sought out another attorney because he "felt like [trial counsel] wasn't representing [him] to the fullest."  However, he did not retain that attorney because he could not afford the attorney's price.

The Petitioner testified that he wanted to go to trial and relayed that to trial counsel. He explained that he ultimately decided to accept the plea agreement "[b]ecause [trial counsel] told [him] that [he] didn't have a chance."  The Petitioner further explained, "it was like [trial counsel] was saying that nothing else could be done, and I didn't know the necessary procedures that I could take to contest what was going on. I just felt like I didn't have a chance."  When asked whether he understood that he had a right to have a jury trial, the Petitioner stated, "I really didn't. I just - it's like I heard what the judge was reading to me; but as far as, you know, understanding what he was saying, I really didn't."  The Petitioner explained that, although it might have appeared as if he understood his right to have a jury trial,

at the time, I didn't - I were [sic] going through withdrawal symptoms, and I didn't know, necessarily what I was doing because I didn't - I didn't understand what was going on. You know, it's like when I hired [trial

counsel], I expected him to do everything in his power to defend me. So I just really put my trust in him because I really did not have any - and I really don't have knowledge of the proceedings as our courts go.

The Petitioner said that he had also asked trial counsel about entering a drug treatment program but that trial counsel said that the Petitioner would not qualify. The Petitioner claimed that he was unaware that the terms of his plea agreement precluded him from seeking any form of probation or alternative sentence until it was announced in court; he did not raise that concern to the trial court because he "didn't even know how to voice it to the court." The Petitioner testified that he began to have second thoughts about his guilty plea after he learned about his mental condition. The Petitioner explained,

> I learned that I'm a bi-polar manic depressant [sic.], and I have been experiencing thoughts of people talking about me; and, you know, thoughts of people taking my life; and, you know, it's like I can't manage money. It's just - it's like I have dreams - at night, I'm sweating, and it's like I have anxiety - outbursts of anxiety all the time, you know, to my mother - to my sister - to my brother - to, you know, the people that love me.

He further explained that this had been going on since he was thirteen but that, as a child, he did not know how to deal with his issues and had neither the information nor the money to address his problems before he was incarcerated and had access to proper care. He also explained that his mother, who was also manic, was recently properly diagnosed, and "that allowed [him] to be properly diagnosed so [he] could stop doing and being misled into things that [he had] done in the past."

Trial counsel testified that he met with the Petitioner approximately seventeen to twenty times during his representation and estimated that he made about fifteen to twenty jail visits, delivering discovery, etcetera. He testified that he visited the Petitioner the same amount of time as he would any "in-custody defendant," except for a few, and that he had been practicing in criminal court for twenty-eight years. Trial counsel stated that he also shared the discovery materials with the Petitioner's girlfriend, and he presented a signed copy of a receipt reflecting such.

Trial counsel testified that the undercover officer who the Petitioner sold cocaine to was being monitored because he had misidentified a defendant in a previous case. He explained that he thought "there might be some headway with that" until he found out that the undercover officer only had one misidentification. Trial counsel testified that there were serious circumstantial issues with the Petitioner's case. He explained that there was never a "dead-on" shot of the Petitioner's face in the surveillance video, creating an element of doubt

as to whether the Petitioner was the person in the video. However, this element was tempered by the facts that trial counsel recognized the Petitioner's voice in the video and that the car involved in the drug sale was registered to the Petitioner's aunt or other relative; trial counsel believed it was doubtful that a jury would believe that the Petitioner's aunt was involved in six different drug sales.

Trial counsel stated that he discussed the plea agreement with the Petitioner before entering the plea. Trial counsel testified, "my hands were tied. . . . the prosecutor . . . was inflexible as a brick. I was steadily getting nowhere, but I continuously reset the case for short periods trying to make some headway." He further testified that he even sought a better plea agreement from the "second in command" in the prosecutor's office but that no one would budge on the plea deal. The prosecutors were primarily concerned with the Petitioner's record, and both he and the Petitioner were frustrated with the negotiations and believed the "ultimate plea was probably predicated on exasperation." Trial counsel said that he did not recall whether the stipulation that the Petitioner would not ask for probation or any alternative sentence was a part of the plea agreement.[1] Trial counsel explained that the Petitioner was always "perfectly in touch," and there was never any indication that the Petitioner needed a mental evaluation. He further explained that, at the hearing, the Petitioner was the same person that he had always dealt with. Trial counsel conceded that there was potentially some regression but stated that the eloquent nature of his petition negated that perception; it was "so well-written and grammatically correct."

In its order denying post-conviction relief, the post-conviction court found that trial counsel was not deficient in his performance and was not obligated to conduct further investigation concerning the Petitioner's mental capacity; there was no indication in the record that the Petitioner had any mental illness. The Petitioner offered no newly discovered evidence that he was suffering from any mental illness nor any proof indicating that he lacked the capacity to understand and waive his rights at the guilty plea hearing. The post-conviction court also found that the Petitioner failed to prove that additional investigation or witnesses would have made a difference. Thus, the Petitioner failed to establish prejudice. The post-conviction court noted that the Petitioner's testimony at the post-conviction hearing and the guilty plea hearing was inconsistent and found that the Petitioner's testimony at the post-conviction hearing was untruthful. The Petitioner, thereafter, filed a timely notice of appeal.

## ANALYSIS

The Petitioner contends that the post-conviction court erred in denying him post-

---

[1] The post-conviction court noted that this stipulation was written on both judgment forms.

conviction relief because he received the ineffective assistance of counsel. Specifically, he contends that his guilty plea was not knowingly and intelligently entered because he was not coherent when he entered his plea and that trial counsel was deficient for failing to request a mental evaluation. The State responds that the Petitioner has failed to prove that his trial counsel was ineffective, that his guilty plea was unknowingly and unintelligently entered, or that a mental evaluation was necessary.

Petitions for post-conviction relief are governed by the Post-Conviction Procedure Act. Tenn. Code Ann. §§ 40-30-101 to -122. To obtain relief, the petitioner must show that his conviction or sentence is void or voidable because of the abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The petitioner must prove his factual allegations supporting the grounds for relief contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(2)(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is clear and convincing when there is no substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. See Nichols v. State, 90 S.W.3d 576, 586 (Tenn. 2002) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)); see also Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). The petitioner has the burden of establishing that the evidence preponderates against the post-conviction court's findings. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). This court may not re-weigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Nichols, 90 S.W.3d at 586. Furthermore, the credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

*I. Ineffective Assistance of Counsel*

Ineffective assistance of counsel claims are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001). Thus, the trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed under a de novo standard, accompanied with a presumption that the findings are correct unless the preponderance of the evidence is otherwise. Fields, 40 S.W.3d at 458 (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed under a de novo standard with no presumption of correctness. Id.

Under the Sixth Amendment to the United States Constitution, when a claim of

ineffective assistance of counsel is made, the burden is on the defendant to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockart v. Fretwell, 506 U.S. 364, 368-72 (1993). A defendant will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley, 960 S.W.2d at 580. The performance prong requires a defendant raising a claim of ineffectiveness to show that counsel's representation was deficient, thus fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697. The Strickland standard has also been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland, 466 U.S. at 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The prejudice component is modified such that the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks, 983 S.W.2d at 246.

*A. Failure to Request a Mental Evaluation*

The Petitioner contends that his trial counsel was deficient for failing to request a mental evaluation to investigate his mental illness. The State responds that the Petitioner offered no proof to support a defense of inability to form a mental state which would

necessitate a mental evaluation.

The applicable test as to competency to stand trial is whether the accused has the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational and factual understanding of the proceedings against him. State of Tennessee v. Billy Joe Carter, No. E2012-00279-CCA-R3-PC, 2013 WL 625597, at *15 (Tenn. Crim. App. Feb. 20, 2013) (citing State v. Benton, 759 S.W.2d 427 (Tenn. Crim. App. 1988)).

The record reflects that trial counsel, an experienced trial attorney, communicated regularly and thoroughly with the Petitioner about his case, providing discovery and discussing issues and defense strategies with the Petitioner. Trial counsel stated that, based upon his interactions with the Petitioner, he did not believe a mental evaluation necessary. He explained that he did not file a motion requesting a mental evaluation because the Petitioner always seemed "perfectly in touch" and appeared to understand the nature of the charges. We discern nothing in the record indicating that the Petitioner was unable to meaningfully consult with trial counsel "with a reasonable degree of rational understanding[.]" Further, as we will discuss in more detail below, the Petitioner's guilty plea hearing colloquy with the trial court suggests that he had "a rational and factual understanding of the proceedings against him." Moreover, as the State points out, the Petitioner failed to present any witnesses at the evidentiary hearing or other documentation to support his claim that a mental evaluation was needed and that trial counsel was ineffective for failing to request one. As such, the Petitioner cannot show that he was prejudiced by trial counsel's failure to request a mental evaluation. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

### B. Plea Knowingly and Intelligently

The Petitioner contends that his plea was unknowingly and unintelligently entered because he was suffering from an undiagnosed mental illness and that he ultimately pleaded guilty because trial counsel was not representing him "to the fullest" and was largely indifferent to his defense. The State responds that the post-conviction court properly concluded that the Petitioner's plea was knowingly and voluntarily entered.

When analyzing the voluntariness of a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S .W.2d 337 (Tenn. 1977). See State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our supreme court in Mackey required an

affirmative showing of a voluntary and knowledgeable guilty plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). In order to find that the plea was entered "intelligently" or "knowingly," Boykin requires that the trial court "canvass[ ] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences." Blankenship, 858 S.W.2d at 904 (quoting Boykin, 395 U.S. at 244).

The courts have recognized that "the decision to plead guilty is often heavily influenced by the defendant's appraisal of the prosecution's case against him and the likelihood of securing leniency through a plea bargain." See id. (quoting Brown v. Perini, 718 F.2d 784, 786 (6th Cir. 1983)). There are a number of circumstantial factors that should be considered when examining the voluntariness of a guilty plea. Id. These factors include (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

Considering those factors, we conclude that the Petitioner's guilty plea was knowingly and intelligently entered. When questioned by the trial judge at the guilty plea hearing, the Petitioner stated that he had gone over his waiver of jury trial form with trial counsel before signing it and that he understood his rights. The Petitioner also stated that he was entering his plea freely and voluntarily. If the Petitioner had gone to trial, he faced up to sixty years as a multiple offender due to his extensive criminal record. The post-conviction court noted that the Petitioner had extensive experience with entering guilty pleas: he had entered guilty pleas approximately thirty times. Thus, the record reflects that the Petitioner understood his rights, and he voluntarily relinquished those rights to avoid a greater punishment by pleading guilty; there is simply no evidence that but for counsel's actions, the Petitioner would not have pleaded guilty.

Further, the Petitioner provided no evidence, and the record does not reflect any, that trial counsel's representation fell below the standard of reasonableness demanded of attorneys in criminal cases, that trial counsel failed to investigate, or that trial counsel was otherwise indifferent to the Petitioner's defense. Therefore, as we have previously concluded that the Petitioner appeared to have had a rational and factual understanding of the proceedings and was able to communicate with trial counsel, the Petitioner is not entitled to relief on this issue.

## CONCLUSION

Based upon the foregoing, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE