IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 2, 2004 Session

## DERRICK TAYLOR v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-26404   Carolyn Wade Blackett, Judge**

_____

**No. W2003-02669-CCA-R3-PC - Filed January 11, 2005**

_____

The Petitioner, Derrick Taylor, was indicted for, and pled guilty to, aggravated assault. The trial court sentenced him to seven years, as a multiple offender, at thirty-five percent. The Petitioner filed a pro se petition for post-conviction relief, which the post-conviction court dismissed. The Petitioner now appeals contending that the post-conviction court erred when it dismissed his petition because: (1) his guilty plea was not knowingly and voluntarily entered; and (2) he received ineffective assistance of counsel. Finding no error in the judgment of the post-conviction court, we affirm its dismissal of the Petitioner's petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH, and JOHN EVERETT WILLIAMS, JJ., joined.

Paul J. Springer, Memphis, Tennessee, for the appellant, Derrick Taylor.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; William L. Gibbons, District Attorney General; and Gail Vermass, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the dismissal of the Petitioner's petition for post-conviction relief. The Shelby County Grand Jury indicted the Petitioner for aggravated assault. The trial court appointed a public defender, Amy Mayne ("Counsel"), to represent the Petitioner. The Petitioner pled guilty, and the court sentenced him to seven years, as a multiple offender, at thirty-five percent. Subsequently, the Petitioner filed a pro se petition for post-conviction relief, which the post-conviction court dismissed. The Petitioner now appeals contending that the post-conviction court erred when it dismissed his petition because his guilty plea was not knowingly and voluntarily entered and he was denied effective assistance of counsel.

The transcript of the guilty plea hearing, included in the record before this Court, showed that the trial court examined the Petitioner regarding his plea. At that hearing, the Petitioner testified that he understood that he was pleading guilty to aggravated assault as a Range II offender at thirty-five percent. The Petitioner acknowledged that his guilty plea would result in a non-appealable conviction, and that this conviction could later be used to enhance future sentences. He testified that he understood he had a right to a speedy trial, a right to testify, and a right to call and cross-examine witnesses at trial. He testified that he understood that he was waiving all of these rights by pleading guilty. The Petitioner said that he understood that aggravated assault was a class C felony.

Further, the Petitioner testified that he had discussed with Counsel the charges against him and the possible defenses and options available to him in his case. The Petitioner stated that he was satisfied with her representation. He said that he was pleading guilty free from threats or coercion, and he wished to enter his plea freely and voluntarily. The Petitioner acknowledged that he would lose his right to vote as a result of this conviction. Further, the trial court explained the maximum sentence and fine for a class C felony and also the sentence to which the Petitioner had agreed. The Petitioner said that he understood this information. Following this examination, the trial court accepted the Petitioner's guilty plea and sentenced him to seven years as a range II offender at thirty-five percent.

At the hearing on the petition for post-conviction relief, the following evidence was presented: The Petitioner testified that he was incarcerated in Hardin County because he pled guilty to aggravated assault. He stated that the victim did not appear at the preliminary hearing. The Petitioner said that, after the victim failed to appear at the preliminary hearing, he received an indictment letter in the mail, and he went to court on the date set forth in that letter. He testified that the court then appointed Counsel to represent him. The Petitioner said that he and Counsel discussed the charges against him "somewhat," and that he understood that he was charged with aggravated assault, based on allegations that he beat his girlfriend with a steel pipe. He also said, however, that he did not think Counsel discussed the charges with him.

The Petitioner testified that he did not graduate from high school, and had quit school in the eleventh grade because he "stayed in trouble." He said that, before he quit school, he received grades of D's and F's, and he did know how to read and write. He stated that, while he was out on bond for the aggravated assault charge, he "picked up a drug charge," and, as a result, was in custody when he entered his guilty plea in this case. The Petitioner stated that he did not think Counsel explained to him that he had the right to a trial, the right to call witnesses, and the right to cross-examine witnesses at trial. He said that Counsel did not explain that he had a right to appeal an unfavorable result of a trial. The Petitioner stated that he and Counsel primarily discussed his aggravated assault and drug charges. He explained that he wanted to dispose of these two charges simultaneously. He stated that he informed Counsel of his preferences in dealing with his charges. The Petitioner testified that Counsel informed him of the State's proposed plea offer of six years for the aggravated assault charge, but he declined this offer because he "had the drug case pending" and could have received a greater sentence for the drug charge than the aggravated assault. He said that he told

Counsel that he wished to get "a lesser sentence on the aggravated assault and take whatever [the State] w[as] going to give [him] for the drug possession."

The Petitioner testified that Counsel never gave him copies of the State's discovery packet, but he never requested to see any of this information. He said that Counsel informed him that the State offered him seven years and a five hundred dollar fine in exchange for his guilty plea. He said that Counsel never told him the maximum sentence that he could receive if convicted at trial, and Counsel never told him with what class of offense he was charged. He said that he met with Counsel once before appearing in the trial court. He said that, during this meeting, he signed his guilty plea paperwork and order of sentence, and that these documents stated that he understood the contents and consequences of these documents. The Petitioner testified that the trial court advised him that he did not have to plead guilty and had a right to a jury trial. He stated that the trial court explained that he had a right to call witnesses on his own behalf and cross-examine the witnesses against him. He said that the trial court informed him that, by entering a guilty plea, he was waiving the right to appeal the conviction. The Petitioner testified that he told the trial court that he understood everything the trial court told him, and that he still wished to plead guilty. He stated, however, that he did not understand to what he was pleading guilty, but "just went along with it" because he believed the State had a "whole lot against [him]," and he believed the victim would testify against him. The Petitioner stated that he later discovered that no one had contacted the victim. He testified that he did not inform Counsel that the victim failed to appear at the preliminary hearing. He explained that he was not aware that this was important information to give to Counsel because, although he was in trouble before, he has never been through a preliminary hearing. The Petitioner said that he pled guilty essentially because he was afraid of a worse outcome if he went to trial.

On cross-examination, the Petitioner stated that, while out on bond, he did not attempt to contact Counsel in person or on the telephone. He said that he expected Counsel to contact him. The Petitioner conceded that, because he was the person facing incarceration, it was his responsibility to contact Counsel. He said that, after he was arrested for drug possession and placed back in custody, he met with Counsel and signed the guilty plea paperwork. He testified that Counsel explained the paperwork and the waiver documents with him before he signed those documents. The Petitioner testified that he believed Counsel was going to get him a "package deal" on both the drug charge and the aggravated assault charge. He denied that he told Counsel he wanted a ten-year sentence in order to serve his time at the Department of Correction. He stated that he told Counsel he would accept a ten-year sentence if it was for both the drug possession and aggravated assault charges.

The Petitioner stated that he recalled the trial court telling him that he was pleading guilty only to the aggravated assault charge, and that the trial court did not mention the drug possession charge. He said that the trial court explained that he was waiving the right to a jury trial, and pleading guilty to a class C felony. The Petitioner testified that he did not know about classes of offenses or sentence ranges, but stated that he "knew aggravated assault [did not] carry [a] seven or [a] six year" sentence. The Petitioner testified that he told the trial court that he was entering his guilty plea freely and voluntarily, that no one had forced or threatened him, and that he was satisfied

with Counsel's representation.

On re-direct examination, the Petitioner stated that his brother "took the [drug] case" and that was why that charge against him was dropped. He stated that he had two prior felony convictions, but he had never been to trial. He testified that he did not know trial procedure, and Counsel did not explain any of that procedure to him.

Counsel, an assistant public defender, testified that she represented the Petitioner when his case came up to the trial court. Counsel said that she was unaware that the victim did not show up at the preliminary hearing because the information in the Petitioner's case file stated that the case was a waiver bind-over, therefore, she assumed that the Petitioner had waived the preliminary hearing. Counsel stated that she gave the Petitioner her card and asked him to contact her before his court date, but the Petitioner did not do so. Counsel testified that, on the Petitioner's court date, July 3, 2001, she told the trial court that the Petitioner had not contacted her, and the trial court told the Petitioner he needed to contact Counsel and then reset the Petitioner's court date for August 22, 2001. Counsel stated that she had the Petitioner's address, but did not attempt to contact him at that address. Counsel said that she did not discuss anything with the Petitioner at his court appearance on July 3, 2001. She said that she copied the State's entire case file on the Petitioner, and read over that information with the Petitioner when they met on August 22, 2001.

Counsel testified that the Petitioner informed her that he was guilty, and he wished to plead guilty. She said that the Petitioner told her that he wished to accept a sentence of ten years, and that Counsel refused to allow the Petitioner to plead to ten years, informing him that the maximum sentence he could receive at trial was ten years. Counsel stated that she spoke with her supervisor because she was unsure whether she should conduct a mental evaluation on the Petitioner, but her supervisor told her that defendants sometimes request sentences of over six years so that they can serve their time in the Department of Correction. She said that the Petitioner indicated that he wanted a sentence of over six years so that he would serve his time in the Department of Correction. Counsel explained that after speaking with her supervisor she felt comfortable allowing the Petitioner to plead to the seven years, and did not feel that a mental evaluation was necessary. She said that she had no trouble communicating with the Petitioner, and did not believe that he had any trouble understanding his situation.

Counsel said that she investigated the possibility of "pleading out" the Petitioner's drug charge, and, although unsure of the reason, determined that the Petitioner should proceed on the aggravated assault charge only. She said that the Petitioner's drug charge never came to her division, so she did not know its final disposition. Counsel stated that she explained to the Petitioner his right to a trial and to call witnesses when she went over the guilty plea paperwork with him. She said that she told the Petitioner that he could not appeal the guilty plea. Further, Counsel said that the Petitioner seemed to understand this information. She testified that she read the affidavit of complaint to the Petitioner, but she did not give him a copy.

On cross-examination, Counsel testified that the Petitioner never informed her that he wished

to go to trial, and she denied that she told the Petitioner that it was her decision whether the Petitioner went to trial. She stated that she never told the Petitioner that there was no defense in his case and his only choice was to plead guilty. Counsel said that the Petitioner's case file contained information that the victim told the officers at the crime scene that she did not wish to press charges, but the file did not contain information that the victim denied that the Petitioner was the person who assaulted her. She stated that she did not coerce or threaten the Petitioner into pleading guilty. Counsel testified that she gets mental evaluations for the defendants that she represents more frequently than she needs "just to be on the safe side," but she did not feel that was necessary in this case.

Counsel explained the manner in which she reviews the guilty plea paperwork with her clients. She stated that she explains the procedure of a trial, the right to an appeal, and the ways a negotiated plea agreement differ from a trial. She said that she told the Petitioner his offense class and sentence range, and even wrote this information down on the waiver and plea documents.

On re-direct examination, Counsel testified that she told the Petitioner that he had the right to testify on his behalf at trial, and that no one could force him to testify or deprive him of the right to testify. She said that she was unsure whether she told the Petitioner that a decision not to testify could not be held against him, but she was sure she informed him that the choice to testify was entirely his and that the State would bear the burden of proving the Petitioner's guilt. She stated that, when she read over the affidavit with the Petitioner, she told him that the victim did not wish to press charges. She said, "that's in the affidavit that [the victim] didn't want to prosecute. But [law enforcement] arrested him anyway."

On re-cross examination, Counsel explained that the prosecutor assigned to the Petitioner's case was "adamant about all his [domestic violence] cases." She said that the victim's reluctance to testify would not have likely deterred the Petitioner's prosecution. She explained that the prosecutor would probably have elicited the victim's testimony, but the victim's presence is not always necessary for prosecution of an offense.

The post-conviction court found that the Petitioner declined the State's plea offer of six years, choosing instead to accept seven years in order to serve his sentence at the Tennessee Department of Correction. The post-conviction court further found that "the Petitioner admits that his decision to enter a guilty plea was made freely and voluntarily." Based on its findings, the post-conviction court concluded that the Petitioner entered his guilty plea "knowingly and intelligently" and "freely and voluntarily." Further, the court concluded that the Petitioner failed to prove that he received ineffective assistance of counsel. The court dismissed the Petitioner's petition for post-conviction relief. It is from this judgment that the Petitioner now appeals.

## II. Analysis

The Petitioner contends that the post-conviction court erred in dismissing his petition for post-conviction relief. Specifically, the Petitioner asserts: (1) his guilty plea was not entered

knowingly and voluntarily; and (2) he was denied the effective assistance of counsel. The State counters that the Petitioner waived both of these issues by failing to cite to any portion of the appellate record in his briefs to this Court, and, alternatively, the Petitioner received effective assistance of counsel and entered a knowing and voluntary guilty plea.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103 (1997). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (1997). Upon review, this court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

## A. Waiver

Initially we note that the Petitioner waived both issues by failing to reference to the appellate record in his brief to this Court. Under Rule 10(b) of the Rules of the Court of Criminal Appeals, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). Accordingly, the Petitioner has waived his claims for relief by failing to provide any references to the record; however, we will nonetheless proceed to address the Petitioner's claims on their merits.

## B. Guilty Plea

The Petitioner contends that his guilty plea was involuntarily and unknowingly entered. Our Supreme Court set forth the following standards pertaining to the constitutional requirements for valid guilty pleas:

> The cases of Boykin v. Alabama and State v. Mackey are the landmark constitutional cases for analyses of guilty pleas. Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (federal standard); State v. Mackey, 553 S.W.2d 337 (Tenn. 1977) (state standard). In Boykin, the United States Supreme Court held that before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily. Id. at 242, 89 S. Ct. at 1711, 23 L. Ed. 2d at 279.

In order to find that the plea was entered "intelligently" or "voluntarily," the court must "canvass[ ] the matter with the accused to make sure he has a full understanding of *what the plea connotes* and *of its consequences.*" Id. at 244, 89 S. Ct. at 1712, 23 L. Ed. 2d at 280 (emphasis added).

State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). Further, the Court has explained that "a plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats,'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43), or if the defendant is "incompetent or otherwise not in control of [his] mental facilities" when the plea is entered. Id. at 904 (quoting Brown v. Perini, 718 F.2d 784, 788 (6th Cir. 1983)). In determining whether a plea is knowing and voluntary the court should examine the totality of the circumstances, including the following factors:

[T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Powers v. State, 942 S.W.2d 551, 556 (Tenn. 1996) (quoting Blankenship, 858 S.W.2d at 904).

In the case under submission, the record reflects that the Petitioner knowingly and voluntarily entered his plea. The Petitioner is sufficiently intelligent to enter a knowing and voluntary plea. The Petitioner testified that he could read and write without difficulty and that he had an eleventh grade education. The Petitioner's testimony at both the post-conviction hearing and the guilty plea hearing display that he was familiar with criminal proceedings. Counsel testified that she had no difficulty communicating with the Petitioner.

Further, Counsel testified that she explained the charges against the Petitioner and that the Petitioner understood the charges. Both the Petitioner and Counsel testified that Counsel reviewed the guilty plea paperwork with the Petitioner and explained the rights and procedures that he was waiving but that would be available with a trial. Counsel testified that she advised the Petitioner not to plead guilty to a ten-year sentence, despite the Petitioner's request for such sentence, advising him instead to agree to a sentence only as long as necessary for the Petitioner to serve his time at the Department of Correction. The Petitioner told the trial court that he was satisfied with Counsel's representation.

Additionally, the Petitioner was fully advised of his rights by the trial court. The transcript of the guilty plea hearing reflects that the trial court fully questioned the Petitioner regarding his rights to a jury trial, his right to testify, and his rights to call and cross-examine witnesses. The transcript reflects that the Petitioner told the trial court that he fully understood his rights and that he was entering his plea voluntarily and free from any threats or coercion. Counsel also testified, at the post-conviction hearing, that she had fully reviewed the Petitioner's rights and explained these

rights to him. The Petitioner admitted that he pled guilty because he wished to serve his time and move on, and he admitted to informing Counsel of this fact. The post-conviction court found that the Petitioner entered his plea knowingly and voluntarily. Based on the record before us, we find no error in the judgment of the post-conviction court.

## C. Ineffective Assistance

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9, of the Tennessee Constitution. Id.; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

In cases involving a guilty plea or a plea of nolo contendere, the petitioner must show prejudice by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

In the case under submission, the Petitioner has failed to prove by clear and convincing evidence that he received ineffective assistance of Counsel or that he was prejudiced by Counsel's representation. Counsel testified that she met with the Petitioner and reviewed his guilty plea paperwork and his rights if he wished to go to trial. Counsel explained that she was available to meet with the Petitioner prior to that date, but the Petitioner failed to contact her to arrange any

meeting. Counsel testified that she reviewed the State's discovery file with the Petitioner and discussed his options regarding trial and sentencing. Further, Counsel testified that she spoke to her supervisor about the Petitioner's expressed desire to accept a ten-year sentence, the maximum he could receive if he went to trial, and she felt assured, by both her conversation with her supervisor and her conversations with the Petitioner, that the Petitioner was sufficiently intelligent and competent to understand his circumstances. Although the Petitioner denied some of these facts, the post-conviction court did not accredit his testimony, and this Court will not re-weigh or re-evaluate issues of credibility. Based on the findings of the trial court, we cannot say that Counsel's representation of the Petitioner fell below the objective standard of reasonableness required of criminal defense attorneys. Thus, the Petitioner has failed to satisfy his burden of proof, and this issue is without merit.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, the judgment of the post-conviction court is affirmed.

_____
ROBERT W. WEDEMEYER, JUDGE