IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 13, 2005 Session

## ERIKA LOUISE BUNKLEY PATRICK v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Dyer County**
**Nos. C00-168A, C01-376A, C01-476A    Lee Moore, Judge**

_____

**No. W2004-02217-CCA-R3-PC  - Filed January 24, 2006**

_____

Petitioner, Erika Louise Bunkley Patrick, appeals the post-conviction court's dismissal of her petition for post-conviction relief in which she alleged that her pleas of guilty were not voluntarily and knowingly entered into and that her trial counsel rendered ineffective assistance in the negotiation and entry of her pleas.  After a thorough review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Fannie J. Harris, Nashville, Tennessee, for the appellant, Erika Louise Bunkley Patrick.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; C. Phillip Bivens, District Attorney General, Karen Waddell Burns, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I.  Background

On June 12, 2000, Petitioner and Christopher Patrick were indicted for first degree felony murder in case No. C00-168A.  Petitioner had been released on bond in that case when she was indicted on October 8, 2001, in case No. C01-376A on two counts of the sale of over 0.5 grams of cocaine, a Class B felony, and one count of the sale of less than 0.5 grams of cocaine, a Class C felony.  Petitioner was also indicted on December 10, 2001, in case No. C01-476A, on one count of possession of over 0.5 grams of cocaine, a Class B felony, and one count of simple possession of marijuana, a Class A misdemeanor.  On January 22, 2002, the State filed a notice of intention to seek the death penalty in case No. C00-168A.  At the time of the incidents, Mr. Patrick, Petitioner's co-defendant, was Petitioner's boyfriend, but the couple married prior to the guilty plea submission hearing.

On April 8, 2003, Petitioner entered into a negotiated plea agreement in settlement of case Nos. C00-168A, C01-376A, and C01-476A. Pursuant to the plea agreement, Petitioner entered a plea of guilty to the lesser included offense of second degree murder in case No. C00-168A, and the trial court sentenced her as a Range I standard offender to fifteen years. At the plea submission hearing, the State offered the following factual basis for the plea. At the time of the incident, Petitioner and Mr. Patrick were caring for the victim, two-year-old Carlos Olden. On January 9, 2000, Petitioner took the victim to his grandmother's house for the afternoon. Mr. Patrick and Mrs. Olden, the victim's grandmother, stated that the victim was healthy when he was returned to Petitioner's care. Mr. Patrick said that he and Petitioner were alone with the victim during the evening of January 9, 2000. Late that evening or during the early morning hours of January 10, 2000, Mr. Patrick said that he heard "whipping sounds" coming from the victim's bedroom, and that Petitioner and the victim were alone in the room. Mr. Patrick then heard a loud noise comparable to something hitting the floor. Petitioner called out to Mr. Patrick and told him that something was wrong with the victim. Mr. Patrick said that the victim was in a "coma like state," and he called 911. The victim never regained consciousness and died the next day. The autopsy report reflected that the victim died of blunt trauma to the head, and that the injuries had been inflicted a short time before medical personnel arrived in response to the 911 call. Mr. Patrick said that he helped Petitioner fabricate a reason for the victim's injuries, and that he and Petitioner agreed to say that the victim had fallen out of his bed. Petitioner said that his initial statement to the police was not truthful.

At the plea submission hearing, the State said that the charges in case Nos. C01-376A and C01-476A arose out of a series of arranged buys by police officers utilizing a confidential informant. In Case No. C01-376A, the State offered as proof in count one of the indictment that on July 6, 2001, two confidential informants were searched and provided money with which to purchase drugs. The informants went to Petitioner's home and told Mr. Patrick that they wanted to buy an "eight ball" of crack cocaine. Mr. Patrick told the two men that the cocaine would cost $160.00. Petitioner took the money from the confidential informants, went into the bedroom and retrieved the cocaine, and handed the cocaine to one of the informants. The substance purchased from the Patricks tested positive for cocaine and weighed 1.1 grams. In count two, the State submitted that on July 18, 2001, the confidential informants returned to Petitioner's home and bought six rocks of crack cocaine, weighing 1.0 gram, for $70.00. In count three of the indictment, the State offered as proof that a confidential informant asked Petitioner for $60.00 worth of crack cocaine. Petitioner went into another room and returned with one rock of cocaine weighing 0.4 grams and took the informant's $60.00 in exchange for the drugs.

In case No. 476A, the State offered as proof that Officers Jim Joyner and Tod Thayer went to Petitioner's and Mr. Patrick's residence to serve a capias based on the prior sales of cocaine to the confidential informants. The officers observed in plain view a quantity of crack cocaine on the kitchen stove, and a bag of marijuana and a postal scale on the coffee table. The officers also found a large amount of cash in the kitchen and on Mr. Patrick.

Petitioner entered a plea of guilty to the charged offenses in case No. C01-376A and to count one of case No. C01-476A. An order of nolle prosequi was entered as to count two of the indictment, simple possession of marijuana, in case No. C01-476A. Pursuant to the terms of the plea agreement, the trial court sentenced Petitioner to twelve years for each of her Class B felony drug convictions and six years for her Class C felony drug conviction. The trial court ordered Petitioner's sentences in case Nos. C01-376A and C01-476A to be served concurrently with each other but consecutively to her sentence for the second degree murder conviction.

During the guilty plea submission hearing, Petitioner affirmed that she understood that by entering her pleas of guilty she was waiving her right to trial by jury, the right to confront the witnesses against her, and the right to subpoena witnesses to appear and testify on her behalf. Petitioner stated that she understood she was giving up her right to appeal, and her right of representation of counsel at a trial and on appeal. Petitioner stated that she understood the range of punishment that she might receive if tried and convicted of each charged offense. Petitioner affirmed that the information supplied by the State in support of her convictions was correct, and that she was voluntarily pleading guilty of her own free will and choice. Petitioner stated that her attorneys had answered all of her questions about the guilty plea submission process, and that she was satisfied with counsel's representation. Petitioner affirmed that she was not under the influence of alcohol, drugs, or other forms of medication. Petitioner stated that she understood the length of her sentences and the release eligibility dates attributed to her conviction of each offense.

## II. Post-Conviction Hearing

Petitioner filed a petition for post-conviction relief on March 22, 2004 alleging that her pleas of guilty in case Nos. C00-168A, C01-376A, and C01-476A were not voluntarily and knowingly entered into and that her trial counsel rendered ineffective assistance of counsel during the negotiation and entry of her pleas.

Petitioner said that she retained William Randolph as trial counsel when she was arrested on the felony murder charge. Petitioner said that after the State filed its notice of intention to seek the death penalty, the trial court found her to be indigent and appointed Mr. Randolph to represent her on the murder charge as lead counsel. The trial court appointed Tod Taylor, an assistant public defender, to serve as co-counsel. Jim Horner, the district public defender, was appointed to represent her on the drug charges in case No. C01-476A, and Mr. Randolph was appointed to represented her on the remaining charges in case No. C01-376A.

Petitioner said that she received a note from Mr. Patrick on April 7, 2003, in which he said that he was accepting an offer of settlement in connection with the felony murder and drug charges, and that he was "sorry." Petitioner said that Mr. Randolph visited her that night at jail. He told her that the State had offered a settlement of the charges against her, which included a recommended sentence of twenty-five years for the felony murder charge and eight years for each of the Class B felony drug charges. Petitioner said that she did not want to accept the offer because she was innocent of the felony murder charge. Petitioner said that Mr. Randolph called the prosecutor and

offered to settle the charges by increasing the sentences for the Class B felony drug charges to twelve years and decreasing the felony murder sentence to fifteen years, and the State agreed to the proposed settlement offer. Petitioner said that Mr. Randolph told her she would die if she did not accept the offer. Mr. Randolph called Petitioner's mother, and Petitioner talked to her about the offer of settlement. Petitioner said that Mr. Taylor disagreed with some of the terms of the State's offer, but Mr. Randolph was the lead attorney.

Petitioner said that none of her attorneys wanted to talk about the drug charges during their meetings and focused instead on the felony murder case. Petitioner said that Mr. Horner wanted her to enter a plea of guilty to the drug charges and provide evidence against Mr. Patrick, but Petitioner refused. Petitioner said that she knew the drug charges carried a sentencing range of between eight and twelve years, but she did not understand the various offender classifications.

Petitioner said that she first saw the final plea agreement approximately ten minutes before the plea submission hearing. Petitioner said that Mr. Randolph read the plea agreement form to her, but she was groggy from the aftereffects of Visteril and Benadryl which she had taken the night before. Petitioner said that Darla Hardin, an L.P.N. at the county jail, gave her several days worth of the medicine at one time when she was not going to be making rounds for a few days. Petitioner said she saved the medicine and took multiple doses, generally on the weekends. Petitioner said that she did not tell the truth when she told the trial court that she was not on medication at the time of her plea submission hearing.

Petitioner said that before the plea submission hearing Ms. Hardin was concerned that Petitioner was suicidal and referred her to Pathways for a mental evaluation. Petitioner said that a doctor or psychiatrist at Pathways prescribed Paxil and Hydroxyzine for her, but she did not tell her attorneys that she was taking this medicine.

On cross-examination, Petitioner said that she met several times with all three of her attorneys about the felony murder and drug charges. Petitioner said that several proposed offers of settlement were discussed before April 8, 2003, and she understood the potential sentences contained in the State's recommendations. Petitioner agreed that she never denied that she was guilty of the drug charges, but she denied that she used the drug charges to gain a more favorable sentence on the felony murder charge. Petitioner said that she discussed release eligibility dates and consecutive sentencing with her attorneys. On redirect examination, Petitioner reiterated that she accepted the State's offer of settlement in order to avoid the death penalty.

Felicia Taylor, Petitioner's cousin, said that Petitioner was lethargic and drowsy during a couple of her visits with Petitioner at the county jail. Ms. Taylor said that Petitioner told her she was on medication, but Ms. Taylor did not know what medicine Petitioner was taking. Ms. Taylor said that Ms. Hardin would give out multiple doses of Benadryl, and Petitioner kept a bag of pills under her bunk bed.

Captain Larry Bell, with the Dyer County Sheriff's Department, testified that all visitors to the jail were required to sign in. According to the register, Mr. Randolph visited Petitioner twenty-three times between January 2003 and April 2004. Captain Bell said that random searches of the inmates' cells were performed, and no pills were ever found in Petitioner's cell.

Ms. Hardin testified that her duties at the Dyer County Jail included responding to sick calls, distributing medications, and arranging for inmate visits to medical personnel in the community. Ms. Hardin said that she was authorized to distribute over-the-counter medications such as Tylenol and Benadryl, but she denied that she gave Petitioner more than one Benadryl tablet at a time. Ms. Hardin said that following Petitioner's examination at Pathways in late October 2001, Petitioner was prescribed Paxil, Trazodone and Hydroxyzine. Petitioner refused to take the medicine and executed a refusal of medical services form on January 18, 2002. Ms. Hardin said that she did not give Petitioner any Benadryl during the evening of April 7, 2003.

The affidavit of Mary Bunkley, Petitioner's mother, was entered as an exhibit without objection by the State. In her affidavit, Ms. Bunkley stated that Petitioner seemed drugged or sleepy when she visited her daughter at the jail, and Ms. Bunkley told Petitioner to stop taking the medicine. Ms. Bunkley stated in her affidavit that Mr. Randolph called her on April 7, 2003, and told her that Petitioner had to plead guilty to the felony murder charges "or she was going to be executed." Ms. Bunkley said that Mr. Randolph told her that Mr. Patrick was going to testify at trial that Petitioner had inflicted the injuries that led to the victim's death. Ms. Bunkley said that Mr. Randolph told her that they only had one hour to decide what to do and asked her to talk to Petitioner. Ms. Bunkley stated that Petitioner was crying and upset, but she agreed to help "Mr. Randolph coerce [Petitioner] to plead guilty" because she was afraid that Petitioner "would be executed for something she did not do."

Mr. Randolph testified that he met with Petitioner frequently during the pendency of the charges, and he gave her his cell phone number so that Petitioner or her family members could contact him at any time. Mr. Randolph said he hired an investigation team who interviewed Petitioner several times. The investigators also interviewed potential mitigation witnesses in preparation for the sentencing phase of the trial. Mr. Randolph said that he discussed the investigation team's progress reports with Petitioner and gave her copies of his file.

Mr. Randolph said he and Mr. Taylor filed approximately thirty-one motions including a request for a mental evaluation. Mr. Randolph, however, arranged for Dr. Pamela Abule to perform a preliminary mental evaluation of Petitioner. Dr. Abule found no sign of severe medical disorder or defect in Petitioner and concluded that Petitioner was competent to stand trial. Mr. Randolph said that he told Petitioner about Dr. Abule's conclusions, and Petitioner laughed and said she knew she was all right. Petitioner agreed to withdraw the motion requesting a mental evaluation.

Mr. Randolph said that he reviewed the victim's autopsy report and interviewed Dr. O. C. Smith concerning his findings. Mr. Randolph said that the medical proof was not very favorable. In addition, Petitioner had made some comments to other people that were damaging to her case.

Mr. Randolph said that several offers of settlement were discussed in the months preceding the plea submission hearing. Initially, before the notice of intent to seek the death penalty was filed, the State offered to dismiss the felony murder charge if Petitioner testified against Mr. Patrick. Mr. Randolph learned that the same offer was extended to Mr. Patrick, and Mr. Randolph explained to Petitioner that "it would be a race to the courthouse," and "whichever one got to the courthouse first . . . would get the deal." Petitioner refused to accept the offer because she did not want to testify against Mr. Patrick, and she did not believe that Mr. Patrick would accept the State's offer.

After Petitioner was indicted on the drug charges, Mr. Randolph said that the State offered to settle all of the charges with a recommended sentence of ten years on the Class B felony drug charges, and a plea of guilty to the lesser offense of criminally negligent homicide with a recommended sentence of two years. The State's offer was contingent on Petitioner's testifying against Mr. Patrick. Mr. Randolph said that Petitioner was agreeable to the length of sentences offered by the State but again refused to cooperate in the State's case against Mr. Patrick. The State then filed a notice to seek the death penalty. Mr. Randolph said that, at this point in time, the prosecutor told him that the State would not recommend less than twenty-five years on any lesser included offense of felony murder or ten years on the Class B felony drug charges if Petitioner continued to refuse to cooperate. Petitioner refused the offer, and Mr. Randolph said that he concentrated on preparing for trial.

When he learned on April 7, 2003, that Mr. Patrick had agreed to testify against Petitioner, Mr. Randolph immediately drove to the Dyer County Jail. He said that he and Petitioner called Petitioner's mother, and they discussed the ramifications of Mr. Patrick's plea agreement with the State during a three-way conversation. Mr. Randolph said that he asked Petitioner what she wanted to do. Petitioner said that she would agree to no more than seventeen years on a lesser included offense of the felony murder charge and ten years on the Class B felony drug charges in exchange for entering pleas of guilty. Mr. Randolph said that he called the prosecutor and suggested that Petitioner serve less time on a lesser included offense of the felony murder charge in exchange for serving maximum sentences on the Class B felony drug charges, and the State accepted the offer. Mr. Randolph said that he reviewed the proposed sentences and the release eligibility dates with Petitioner at length. Mr. Randolph said that Petitioner understood their discussion and corrected him one time when he stated the wrong eligibility date. Mr. Randolph denied that he told Petitioner that she only had one hour to make up her mind.

Mr. Randolph said that he and Mr. Taylor reviewed the proposed plea agreement with Petitioner again before the guilty plea submission hearing on April 8, 2003. Mr. Randolph said that Petitioner did not appear sleepy or groggy on the morning of the plea submission hearing.

Mr. Taylor testified that Petitioner did not appear to be under the influence of any drugs on April 8, 2003, and understood that entering a plea of guilty was in her best interest.

Mr. Horner testified that Petitioner never said she was not guilty of the drug charges and did not express an interest in proceeding to trial on these charges. Mr. Horner said that everyone's focus, including Petitioner's, was on the murder case.

At the conclusion of the evidentiary hearing, the post-conviction court found that Petitioner had voluntarily and knowingly entered into her plea agreement, that she was well informed of the issues surrounding her cases, and that she understood the nature and consequences of her plea. The post-conviction court further found that Petitioner failed to establish by clear and convincing evidence that she was under the influence of medication when she entered into her plea. The post-conviction court also found that Petitioner's counsel rendered effective assistance in the negotiation and entry of Petitioner's plea of guilty.

## III. Standard of Review

A petitioner seeking post-conviction relief must establish his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f)(1997). However, the trial court's application of the law to the facts is reviewed *de novo*, without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). A claim that counsel rendered ineffective assistance is a mixed question of fact and law and therefore also subject to de novo review. *Id.*; *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must establish that counsel's performance fell below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In addition, he must show that counsel's ineffective performance actually adversely impacted his defense. *Strickland v. Washington*, 466 U.S. 668, 693, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984). In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State,* 629 S.W.2d 4, 9 (Tenn. 1982). The reviewing court, therefore, should not conclude that a particular act or omission by counsel is unreasonable merely because the strategy was unsuccessful. *Strickland,* 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from counsel's perspective at the point of time they were made in light of all the facts and circumstances at that time. *Id.* at 690, 104 S. Ct. at 2066.

A petitioner must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *See Henley v. State,* 960 S.W.2d 572, 580 (Tenn. 1997). That is, a petitioner must not only show that his counsel's performance fell below acceptable standards, but that such performance was prejudicial to the petitioner. *Id.* Failure to satisfy either prong will result in the denial of relief. *Id.* Accordingly, this Court need not address one of the components if the petitioner fails to establish the other. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In cases involving a guilty plea, the petitioner must show prejudice by demonstrating that, but for counsel's errors, he or she would not have pleaded guilty but would have insisted on going to

trial.  *See Hill v. Lockhart*, 474 U.S. 42, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *Bankston v. State*, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

## IV.  Ineffective Assistance of Counsel

### A.  Failure to Investigate Drug Charges

Petitioner argues that all three attorneys rendered ineffective assistance of counsel because they failed to investigate the drug charges before Petitioner entered her plea of guilty to the charges. Mr. Randolph testified that he was appointed to represent Petitioner on the drug charges in case No. 376A, and Mr. Horner was appointed to represent her on the possession charges in case No. 476A. Mr. Randolph said that he discussed the drug charges with Petitioner, including the range of punishment.  Mr. Randolph said that Petitioner admitted she was guilty on the drug charges and never indicated that she wanted to proceed to trial on those charges.  Mr. Randolph said that Petitioner told him that "she had been selling drugs because that was the only way she had to make money because she lost her job at the nursing home due to" the murder case.  Mr. Randolph testified that in August 2002, months before Petitioner entered her pleas of guilty, Petitioner asked Mr. Randolph to negotiate a lower sentence for the felony murder charge by offering a higher sentence for the drug charges.

Mr. Horner testified that he discussed the evidence in case No. 476A with Petitioner, and explained to Petitioner that the State was making any plea agreement on the felony murder charge contingent on entering a plea to the drug charges.

Mr. Taylor said that although he was appointed to represent Petitioner on both the murder and the drug charges, the murder charge was his main focus because it was scheduled for trial first. Mr. Taylor agreed that limited attention had been paid to preparing the drug charges for trial.

The post-conviction court found that the evidence presented at the evidentiary hearing did not support a finding that Petitioner's attorneys "failed to evaluate the evidence on the drug charges."

Relying on *State v. Gaston L. Edison*, No. 02-C01-9109-CR-00209, 1992 WL 156032 (Tenn. Crim. App., at Jackson, July 8, 1992), *no perm. to appeal filed*, Petitioner argues that her attorneys had a duty to investigate the drug charges regardless of her admission of guilt as to these charges. In *Edison*, a panel of this Court noted that "the constitutional right to the effective assistance of counsel has encompassed the pre-trial investigation of the facts and circumstances surrounding the crime alleged in the charging instrument."  *Id*., 1992 WL 156032, at *6 (citations omitted).  In fulfilling this duty, counsel "'should interview not only his own witnesses, but also those the [State] intends to call, when they are accessible.'"  *Baxter*, 523 S.W.2d at 933 (quoting *United States v. DeCoster*, 487 F.2d 1197, 1203-04 (1973)).  An accused's admission of guilt or desire to plead guilty does not relieve counsel of a duty to conduct pre-trial investigation.  *Gaston L. Edison*, 1992 WL 156032, at *7.

Other than an allegation that her attorneys failed to adequately investigate the drug charges before she entered her plea of guilty, however, Petitioner has not shown that a more through investigation would have benefitted Petitioner or provided a possible defense. The two-part *Strickland* test is "applicable to ineffective-assistance claims arising out of the plea process," and a petitioner must establish that she was prejudiced by her counsel's failure to investigate. *Hill*, 474 U.S. at 57-58, 106 S. Ct. at 370. In the context of a guilty plea, "where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the [petitioner] by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Id*. at 59, 106 S. Ct. at 370-371.

The evidence does not preponderate against the post-conviction court's finding that Petitioner's attorneys did not render ineffective assistance of counsel in the investigation of her drug cases. Moreover, even if the scope of counsel's investigation of Petitioner's drug charges was deficient, Petitioner has failed to show what a more thorough investigation would have revealed or that Petitioner would have insisted on proceeding to trial on the drug charges. The post-conviction court found:

> It also appears from the testimony of all the parties that the offer of settlement that [Petitioner] accepted was an offer to settle all of the cases pending against her. Her plea agreement to fifteen years on a second degree murder charge necessarily included a plea on the pending drug cases. The plea of second degree murder with a fifteen[-]year sentence was not available unless she did, in fact, plead guilty to the drug charges. It appears to the Court, however, that [Petitioner] was well aware of the fact that she could go to trial on all of her cases had she chosen to do so.

Based on our review of the evidence presented at the evidentiary hearing, we cannot conclude that Petitioner was prejudiced by any deficiency in the extent of her attorneys' investigation of the drug charges prior to the entry of her pleas of guilty. Petitioner is not entitled to relief on this issue.

## B. Coercion During Plea Negotiations

Petitioner argues that Mr. Randolph's representation fell below reasonable standards because he used her mother's influence to help him coerce Petitioner into entering pleas of guilty to the felony murder and drug charges. Mr. Randolph testified that he had known Ms. Bunkley for approximately twenty years, and Ms. Bunkley had been involved in Petitioner's case from the beginning. Mr. Randolph stated that he called Ms. Bunkley while he was with Petitioner on April 7, 2003, and that the three of them discussed Petitioner's options. At the end of their three-way conversation, Mr. Randolph said that he asked Petitioner, "what will you do?" Petitioner responded that she would "do something like seventeen [for the felony murder charge] plus ten or something like that [for the drug charges]." With this authorization, Mr. Randolph contacted the prosecutor and

eventually negotiated recommended sentences of fifteen years for the murder charge and twelve years for the drug charges. Mr. Randolph testified that he did not tell Petitioner that she had only one hour to make a decision, and he did not tell her that she would die if she decided not to accept a plea agreement.

The post-conviction court found that Mr. Randolph did not coerce Petitioner into entering a plea of guilty. The post-conviction court accredited the testimony of Petitioner's attorneys concerning the sequence of events which occurred on April 7 and April 8, 2003, thereby implicitly finding that Ms. Bunkley's testimony was not credible. The post-conviction court found that,

> [b]oth of [Petitioner's] trial attorneys indicated that although [Petitioner] was advised of the fact that she faced execution on a death penalty case, that they did not threaten her with death. Trial counsel stated specifically that [Petitioner] was advised that her case did not look good since her husband had agreed to testify against her. Trial counsel indicated that on April 8, 2003, [Petitioner] did not appear to be under the influence of any drug. Mr. Taylor stated that [Petitioner] was coherent and understood the situation. Mr. Randolph also indicated that she understood what was happening.

Based on our review, we conclude that the evidence does not preponderate against the post-conviction court's findings that Petitioner's counsels' representation did not fall below the reasonable standard demanded of defense attorneys. Petitioner is not entitled to relief on this issue.

## C. New Factual Allegations

Petitioner raises for the first time on appeal several new factual allegations supporting her ineffective assistance of counsel claim. That is, Petitioner argues that Mr. Randolph rendered ineffective assistance of counsel by failing to obtain a written copy of Mr. Patrick's second statement to the police. She also argues that Mr. Randolph failed to adequately review the statement before advising Petitioner to enter a plea of guilty, and that he implied to Petitioner that she should admit as true the factual basis for her pleas as presented by the State at the plea submission hearing when Petitioner believed that the facts were false. Petitioner also contends for the first time on appeal that Mr. Horner rendered ineffective assistance of counsel because he was not present at the plea submission hearing, and Mr. Taylor's assistance was ineffective because he implicitly advised Petitioner that she should not tell the trial court that she had ingested Benadryl and Visteril before the hearing.

A petition for post-conviction relief is a single claim for relief under the Post-Conviction Procedure Act even though the violation may be proved by multiple acts or omissions on the part of counsel. *Thompson v. State*, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997) (citations omitted); *Cone v. State*, 927 S.W.2d 579, 581-82 (Tenn. Crim. App. 1995). Thus, all factual allegations must be presented in one claim. *See* Tenn. Code Ann. § 40-30-106(d). A petitioner may not relitigate a claim of ineffective assistance of counsel "by presenting new and different factual allegations" on

appeal. *Thompson*, 958 S.W.2d at 161; *Roger Clayton Davis v. State*, No. 03C01-9902-CR-00076, 2000 WL 21307 (Tenn. Crim. App., at Knoxville, Jan. 14, 2000), *perm. to appeal denied* (Tenn. Sept. 5, 2000).

It appears that Petitioner's additional factual allegations supporting her claim of ineffective assistance of counsel, which were not raised in her petition for post-conviction relief, are in response to testimony developed at trial. Furthermore, Petitioner did not make a motion for the post-conviction court to consider these additional factual allegations as a basis to prove ineffective assistance of counsel. The post-conviction court did not make any findings of fact on the factual allegations Petitioner now raises. *See* Tenn. R. App. P. 36(a) (No "relief may be granted in contravention of the province of the trier of fact."). Consequently, these issues have been waived. *See Cone*, 747 S.W.2d at 357.

## V. Guilty Plea

Petitioner argues that she could not make an informed choice as to whether or not to accept the State's offer of a plea agreement because her attorneys' advice was based primarily on Mr. Patrick's second statement to the police which Petitioner contends was not reviewed by her attorneys. Petitioner submits that the evidence is clear that she always maintained that she wanted to proceed to trial on her charges, and that but for the "inadequately prepared advice of her counsel" she would not have entered a plea of guilty.

When an accused enters a plea of guilty, constitutional considerations mandate that the plea be voluntarily, understandingly and knowingly entered. *See Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1713, 23 L. Ed. 2d 274, 279 (1969); *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1997). By entering a plea, the defendant waives certain constitutional rights including the privilege against self-incrimination, the right to a trial by jury, and the right to confront witnesses. *Boykin*, 395 U.S. at 243, 89 S. Ct. at 1714. The defendant's waiver of these constitutional rights may not be presumed from a silent record. *Id.* A plea cannot be voluntary if the accused is "incompetent or otherwise not in control of his mental facilities" at the time the plea is entered. *Blankenship v. State*, 858 S.W.2d 897, 904-05 (Tenn. 1993) (quoting *Brown v. Perini*, 718 F. 2d 784, 788 (6th Cir. 1983)). The trial court must ascertain if the defendant fully understands the significant consequences of his or her plea. *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1977). The trial court may consider a number of factors including the defendant's relative intelligence, his or her familiarity with criminal proceedings, whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about options, the advice give by counsel and the trial court about the charges against the defendant and the penalty to be imposed, and the defendant's reasons for pleading guilty. *Blakenship*, 858 S.W.2d at 904.

The post-conviction court found that the trial court advised petitioner during her plea submission hearing of her right to trial by jury, her right to confront and cross-examine witnesses, and her right against self-incrimination. The post-conviction court further found that:

Petitioner was questioned carefully about other issues to make sure that she fully understood what she was doing. [Petitioner] testified under oath that she understood the various ranges of punishment if she were tried and convicted as charged. [Petitioner] also stated under oath that her attorneys had answered all of her questions that she had about her plea of guilty. She stated further that her attorneys had done everything that she had asked and expected them to do in preparing her cases, and she was satisfied completely with the way she had been represented by both Mr. Randolph and Mr. Taylor.

The post-conviction court further found that Petitioner "had a clear understanding of the maximum consecutive sentences from both the testimony [of] trial counsel and from the transcript of the guilty plea . . . and that [Petitioner] was well-informed of the issues in her cases, and she understood fully the nature and consequences of her plea."

Based on our review of the record, we conclude that the evidence does not preponderate against the post-conviction court's finding that Petitioner voluntarily, knowingly and intelligently entered her pleas of guilty to all of the charged offenses. Petitioner is not entitled to relief on this issue.

## CONCLUSION

After a thorough review, we affirm the judgment of the post-conviction court.

_____
THOMAS T. WOODALL, JUDGE

-12-