IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 7, 2017

## RONALD CURRY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 13-00365      Chris Craft, Judge

_____

### No. W2016-02158-CCA-R3-PC

_____

The petitioner, Ronald Curry, pled guilty to rape of a child for which he received a sentence of twenty-five years. He filed the instant post-conviction petition, and following an evidentiary hearing, the post-conviction court denied relief. On appeal, the petitioner contends that trial counsel was ineffective for failing to adequately evaluate the mental health issues of the petitioner and for failing to secure and present evidence of his innocence. The petitioner also claims trial counsel coerced him into pleading guilty. Upon review of the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J. and NORMA MCGEE OGLE, J., joined.

Constance Wooden Alexander, Memphis, Tennessee, for the appellant, Ronald Curry.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Melanie Cox, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.     *Facts from the Guilty Plea Hearing*

On December 17, 2013, the petitioner, who was twenty-one at the time of the offense, pled guilty to rape of a child for which he received a sentence of twenty-five

years in confinement to be served at 100%. The facts underlying the plea, as explained by the State, were as follows:

Had this matter gone to trial, the State's proof would have been that on July 23[], 2012, Memphis Police Department responded to a complaint. And the complainant in this case advised that his 11 year-old daughter, initials A.T., was the victim of a rape by [the petitioner].

Apparently, [the petitioner] had been staying with their family. And during the course of that, the child disclosed that [the petitioner] waited until all of the adults in the house left. There were other children. [The petitioner] told all the kids to go outside except for [the victim]. [The petitioner] told [the victim] to go get on the bed. And on June the 17th, or thereabout, 2012, [the petitioner] forced penile/vaginal penetration on [the victim]. [The victim] also disclosed that she told [the petitioner] to stop because it hurt, but he would not and he finished.

[The victim] was taken both to a doctor and to Rape Crisis. She was found to be pregnant. The pregnancy was terminated. DNA was performed on the tissue and it was found that [the petitioner] was the father of that baby.

In addition, [the petitioner] was interviewed by the Memphis Police Department . . ., and he confessed. As I stated earlier, however, [the petitioner] did try to put some responsibility [on the victim] by saying it was the child's fault.

During the plea colloquy, the petitioner, a high school graduate, informed the trial court that he understood his rights. The petitioner affirmed that trial counsel reviewed the plea petition and his rights with him. He also acknowledged he had the rights to a trial by jury, to confront witnesses against him, and to compel his own witnesses to come to court. Finally, the petitioner affirmed he was entering his plea freely and voluntarily. The trial court accepted the plea agreement and found the petitioner guilty of rape of a child, sentencing him to the agreed upon sentence of twenty-five years.

## II. Facts from the Post-Conviction Hearing

On July 31, 2015, the post-conviction court conducted an evidentiary hearing concerning the instant petition. The petitioner testified that trial counsel only visited him in the jail on one occasion. He also stated trial counsel failed to provide him with a copy of the discovery trial counsel obtained from the State. According to the petitioner, trial

counsel's main concern was convincing the petitioner to plead guilty. The petitioner testified that trial counsel "force[d]" him to plead guilty by telling him and his family, "If you go to trial[,] they are going to railroad you."

The petitioner testified that he provided trial counsel with a "list of things" he wanted investigated and that he wanted trial counsel "to talk to a certain witness and my family and talk to the victim['s] family. He didn't do none of that." According to the petitioner, trial counsel should have contacted the victim and her family because "they had a change of heart." The petitioner also testified that he knew he could have received a longer sentence had he gone to trial. However, he also stated that he would have gone to trial if he had known twenty-five years was the minimum sentence.

On cross-examination, the petitioner testified that he wanted to go to trial but trial counsel "kept telling me [to] plead guilty to it you'll be alright." The petitioner admitted, however, that the trial court spent significant time explaining the terms of the plea and the petitioner's rights to him during the plea hearing. The trial court also allowed the petitioner to meet with trial counsel and his mother before making his decision whether to plead guilty or go to trial.

The petitioner's mother, Geillica Williams, and the petitioner's brother, Vernon Deandre Crenshaw, also testified on behalf of the petitioner during the post-conviction hearing. While Ms. Williams could not provide any substantive examples of what trial counsel should have done, she testified generally that trial counsel "could have [done] a better job." Similar to Ms. Williams's testimony, Mr. Crenshaw questioned trial counsel's representation of the petitioner but was unable to articulate any examples of what trial counsel should or could have done differently. Additionally, Mr. Crenshaw testified the family informed trial counsel that the petitioner was mentally retarded. However, Mr. Crenshaw admitted that he was unaware the petitioner received a mental health evaluation.

Trial counsel was the final witness called during the post-conviction hearing. Trial counsel testified that he had been practicing criminal law for 34 years and, during that time, had handled "a very fair amount" of criminal trials. Trial counsel testified he thoroughly investigated the petitioner's case, including requesting a mental health evaluation to ensure the petitioner was "competent to confer with me and he understood the proceedings." Trial counsel explained that he did not file a formal motion for discovery because the State provided him with open file discovery. When questioned about his consultation with the petitioner, trial counsel noted the difficulty of a defense of actual innocence since the petitioner confessed and DNA testing of the fetus established the petitioner as the father.

On cross-examination, trial counsel noted the petitioner received the minimum sentence allowed for the charged offense. Trial counsel also testified that the State had a "very strong" case and, therefore, he advised the petitioner that pleading guilty was in his best interest. In addition to explaining the strength of the State's case and the "chances" of a longer sentence should the petitioner choose to go to trial, trial counsel also had these discussions with the petitioner's mother "[a]s well as some other family members." In order to ensure the petitioner fully understood his options and circumstances, trial counsel enlisted the help of another experienced attorney to speak with the petitioner and provide him with another perspective. Trial counsel concluded his testimony stating "I'm confident [the petitioner] made his own decision especially after talking with his mother."

At the close of the testimony, post-conviction counsel informed the post-conviction court "there is some information [the petitioner] wants me to get from his mother" and introduce in court. The post-conviction court granted the petitioner's request and recessed the hearing until August 28, 2015. On August 28, 2015, the petitioner filed, as an exhibit to his petition, "some reports from Memphis City Schools when [the petitioner] was a student . . . in the school system." The petitioner then argued his school records showed he suffered "some mental health ailments" and "that he did not understand the ramifications of submitting the guilty plea."

On September 23, 2015, the post-conviction court entered a written order denying the petition for post-conviction relief. This appeal followed.

### III.    Analysis

#### A.  Standard of Review

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (*quoting Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the post-conviction court are conclusive on appeal unless the evidence preponderates against them. *See Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). The appellate court will not reweigh the evidence and will defer to the post-conviction court's

findings when reviewing factual issues such as the credibility of witnesses or the weight of their testimony. *Id.* However, the appellate court will review a post-conviction court's application of law to the facts of the case de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

## B. Ineffective Assistance of Counsel

Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution mandate that criminal defendants receive effective assistance of counsel. *Dwayne Williams v. State*, No. W2014-02415-CCA-R3-PC, 2016 WL 409780 at \*6 (Tenn. Crim. App. Feb. 3, 2016) (citing *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004)). To establish a claim of ineffective assistance of counsel, the petitioner has the burden of showing both that trial counsel's performance was deficient, and the deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee)).

The *Strickland* standard is a two-prong test. First, the defendant must show trial counsel's performance was deficient. *Strickland*, 466 U.S. at 687. This requires showing counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Id.* Second, the defendant must show the deficient performance prejudiced his defense. *Id.* This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.* In the context of guilty pleas, the defendant must show "a reasonable probability that, but for the errors of his counsel, he would not have entered the plea." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *accord Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994).

The petitioner alleges that trial counsel was ineffective for failing to "elicit the expert opinion of an educational specialist trained in mental defects and retardations." However, trial counsel had a mental health evaluation conducted on the petitioner at the outset of his representation. The evaluation revealed the petitioner understood the charges against him and was competent to aid counsel in his defense. Furthermore, as noted by the post-conviction court, "the petitioner presented no proof of any witnesses or facts that might have been uncovered through a more thorough investigation. No mental health experts were produced to refute the competency evaluation . . . ." In order "[t]o succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a post-conviction petitioner should present that witness at the post-conviction hearing." *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008) (citing *Black v. State*, 794 S.W.2d

752, 757 (Tenn. Crim. App. 1990)). "As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." *Id.* Because the petitioner failed to call an "educational specialist trained in mental defects and retardation" during the post-conviction hearing, he cannot meet his burden. *See id.* This issue is without merit.

The petitioner also alleges that counsel was ineffective for failing to secure and introduce evidence of his actual innocence. However, the petitioner failed to present any proof of innocence during the post-conviction hearing. Additionally, the petitioner conceded that the evidence against him consisted of the testimony of a cooperative victim, his own confession, and DNA analysis of the victim's unborn child establishing the petitioner as the father. Again, in order "[t]o succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a post-conviction petitioner should present that witness at the post-conviction hearing." *Pylant*, 263 S.W.3d at 869. "As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." *Id.* Because the petitioner failed to offer any proof refuting or contradicting the State's proof and simply argued counsel should have presented proof of his innocence, he cannot meet his burden. *See id.* This issue is without merit.

## C. Knowing and Voluntary Guilty Plea

Our supreme court set forth the following standards pertaining to the constitutional requirements for valid guilty pleas:

> The cases of *Boykin v. Alabama* and *State v. Mackey* are the landmark constitutional cases for analyses of guilty pleas. *Boykin v. Alabama*, 395 U.S. 238 (1969) (federal standard); *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977) (state standard). In *Boykin*, the United States Supreme Court held that before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily. *Id.* at 242. In order to find that the plea was entered "intelligently" or "voluntarily," the court must "canvass[ ] the matter with the accused to make sure he has a full understanding of *what the plea connotes* and *of its consequences*." *Id.* at 244 (emphasis added).

*State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). Further, the Court has explained that "a plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats,'" *Blankenship v. State*, 858 S.W.2d

897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43), or if the defendant is "incompetent or otherwise not in control of [his] mental facilities" when the plea is entered. *Id.* at 904 (quoting *Brown v. Perini*, 718 F.2d 784, 788 (6th Cir. 1983)). In determining whether a plea is knowing and voluntary the court should examine the totality of the circumstances, including the following factors:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Powers v. State*, 942 S.W.2d 551, 556 (Tenn. 1996) (quoting *Blankenship*, 858 S.W.2d at 904).

In the case under submission, the petitioner contends that trial counsel "force[d] and coerce[d] him to plead guilty . . . ." However, a review of the transcript of the petitioner's guilty plea does not support the petitioner's claim. On the day of the plea, the trial court explained, in depth, the sentence the petitioner was agreeing to as part of the plea, even noting that "you can't, by law, get a sentence less than twenty-five years." The trial court also had the State recite the proof against the petitioner. After hearing the trial court's explanation concerning potential sentences, a summary of the evidence against him, and having the trial court explain the difference between pleading guilty and a jury trial, the petitioner informed the trial court that he wanted to accept the State's plea offer. However, before accepting the petitioner's plea, trial counsel requested, and was granted, the opportunity to speak with the petitioner and to allow the petitioner to speak with his mother. After speaking with trial counsel and his mother, the petitioner again informed the trial court of his desire to plead guilty.

Additionally, after the petitioner concluded his conversation with trial counsel and his mother, the trial court again fully advised the petitioner of his rights. The transcript of the guilty plea hearing reflects that the trial court fully questioned the petitioner regarding his right to a jury trial, his right to testify, and his rights to call and cross-examine witnesses. The transcript also reflects that the petitioner told the trial court that he fully understood his rights and wished to plead guilty. The petitioner also informed the trial court that he understood what he was doing, that he was not confused about anything, and that he had no questions of the trial court. When voir dired by trial counsel, the petitioner admitted that he was entering the plea "by his own choice." The post-conviction court found that the petitioner was not coerced and entered his pleas knowingly and

voluntarily. Based on the record before us, we find no error in the judgment of the post-conviction court.

## CONCLUSION

Based upon the briefs of the parties, the record, and the applicable law, we affirm the judgment of the post-conviction court.

 

_____

J. ROSS DYER, JUDGE