IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 23, 2020

## DEMETREE HARRIS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County
No. 113870     Bob R. McGee, Judge**

___

## No. E2019-01827-CCA-R3-PC

___

The Petitioner, Demetree Harris, appeals as of right from the Knox County Criminal Court's denial of his petition for post-conviction relief, wherein he challenged his two guilty-pleaded convictions for aggravated robbery. See Tenn. Code Ann § 39-14-402. The Petitioner contends that he entered an unknowing and involuntary guilty plea as a result of the ineffective assistance of defense counsel because the Petitioner had not reviewed all of the discovery materials. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Demetree Harris.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

On December 1, 2017, the Petitioner pled guilty in case number 111958 to two counts of aggravated robbery, Class B felonies, with an agreed-upon twelve-year sentence in each count as a Range II, multiple offender, at eighty-five percent service. The plea agreement form noted that the Petitioner would also submit to a violation of probation related to case number 106759, in which the Petitioner was serving an eight-year probationary sentence for unlawful possession of a firearm. By agreement of the parties, the twelve-year sentences would be served concurrently with one another and the violation

of probation and consecutively to a federal judgment in case number 3:14-CR-00163-001-PLR-CCS.

The factual basis articulated by the State at the guilty plea hearing indicated that on August 14, 2017, the Petitioner entered Jimmy's Market in Knox County, where a surveillance camera captured footage of him. Exterior surveillance cameras documented that after the Petitioner left the market, he returned to his car, exited the car with a gun, and approached a car in which Taylor McCall and Kira Weaver ("the victims") were sitting. The victims were expected to testify that the Petitioner used the handgun to demand "property." The victims gave the Petitioner their respective cell phones because they were in fear for their safety. Later police review of the store surveillance cameras led to the Petitioner's being identified as the perpetrator. Defense counsel and the Petitioner declined to add or correct any facts to this version of events, and the Petitioner denied that he wanted to say anything in response.

At the plea hearing, the trial court asked the Petitioner whether he was under the influence of any medications or drugs that might impair his ability to understand the proceedings, which he denied. The Petitioner affirmed that he understood the sentence, including its running concurrently with his probation violation in case number 106759 and consecutively to his federal sentence. He further affirmed that he had read the plea agreement, reviewed it with his attorney, and understood it. The court explained the Petitioner's right to a jury trial, to confront witnesses, to testify or choose not to testify, and to have his case reviewed[1] by the grand jury; the Petitioner averred that he understood he was waiving these rights by pleading guilty. The Petitioner affirmed that he was pleading guilty freely, voluntarily, and knowingly, without threats or promises having been made to him. He agreed that he was guilty of the charges and that he was satisfied with defense counsel's representation. The Petitioner declined to ask any questions of the court.

The trial court accepted the guilty plea, revoked the Petitioner's probation in case number 106759, and imposed the agreed-upon twelve-year sentence in case number 111958. No direct appeal was filed.

On September 10, 2018, the Petitioner filed a timely pro se post-conviction petition alleging that he entered an unknowing and involuntary guilty plea and that he received the ineffective assistance of defense counsel. The post-conviction court appointed post-conviction counsel, who filed an amended petition on July 17, 2019. Relevant to this appeal, the Petitioner argued that defense counsel rendered ineffective assistance by failing to provide the Petitioner with all of the discovery materials.

---

[1] The Petitioner was charged by information in this case.

At the September 12, 2019 post-conviction hearing, the Petitioner testified that defense counsel represented him in General Sessions Court and that counsel visited him three times in four months. Although the Petitioner claimed that he "never saw copies of [his] motion [for] discovery," he stated that counsel described a surveillance recording, which showed the Petitioner inside the convenience store. The Petitioner stated that when he was in jail, he asked counsel multiple times to show him the recording. The Petitioner acknowledged that a police detective previously showed him this recording; counsel, however, told the Petitioner that the recording "wasn't available or he wasn't able to show it to [the Petitioner] at the time because of certain things and stipulations." The Petitioner's family also wanted to see the recording. The Petitioner testified that counsel later described an additional surveillance recording from outside of the convenience store in which the Petitioner was holding a gun. The Petitioner said that when he asked counsel what was depicted in the second recording, counsel responded that the Petitioner was "like Boys In The Hood." The Petitioner asserted that he never saw counsel again after that conversation, and he did not recall whether counsel ever told him that the two victims could identify him. After the Petitioner entered his guilty plea and was transferred to the Tennessee Department of Correction (TDOC), the Petitioner spoke to his wife, who told him that counsel had sent her the discovery materials and that she would review them with the Petitioner.

The Petitioner testified that when he spoke to counsel about the charges, counsel "kept talking about this . . . gun." The Petitioner stated that no gun was recovered, that he allowed the police to search "everything [he] had," and that counsel was aware that the Petitioner denied having used a gun. Counsel also discussed possible federal charges related to the gun, which affected the plea negotiations. The first plea offer counsel conveyed to the Petitioner was for eight years "at a certain percentage, but [then] . . . other things . . . came about." The Petitioner noted that because the firearm charge was ultimately dismissed, one of the Class B felony charges was "reduced" to a Class C felony[2] and that the Petitioner expected to receive probation. The Petitioner stated that he had previous state and federal firearm convictions, for which he went to federal prison and "received relevant conduct for that, eight years at [thirty] percent, unsupervised probation."[3] The Petitioner said that after the firearm charge in the present case was dismissed,[4] counsel returned and conveyed a plea offer of twelve years at eighty-five percent service, which would be served consecutively to the previous federal charge and concurrently with the

---

[2] The record does not reflect that either conviction was reduced to a Class C felony as a result of the plea agreement.

[3] The record reflects that the Petitioner's eight-year sentence related to Knox County case number 106759, not his federal case.

[4] The record does not indicate whether the Petitioner was ever formally charged with a firearm offense in case number 111958; there is no judgment in the record reflecting a dismissed charge.

revocation of his state probation. The Petitioner commented that the prosecutor "was nice enough to do that for [him]."

The Petitioner testified that he waived his right to a preliminary hearing in exchange for receiving discovery. The Petitioner said that if he had viewed all of the discovery materials, he would not have pled guilty because he "could possibly have beaten" the charges. The Petitioner stated that he was worried about not seeing his children after defense counsel repeatedly warned him that he was facing "[fifteen] to life" in federal prison. When asked whether he understood the twelve-year sentence to refer to a probationary sentence rather than a sentence in confinement, the Petitioner responded, "I was . . . thinking about the probation part was the eight years. That's all I kept hearing, the eight, eight, eight, because the gun was dismissed."

When asked if he understood that pleading guilty to aggravated robbery involved a mandatory "sentence to serve," the Petitioner testified that he understood it "after the fact." However, upon further questioning, the Petitioner admitted that he knew at the guilty plea hearing that he would go to prison for twelve years. The Petitioner stated that he learned this fact the night before the plea hearing and when he arrived at court, "it was supposed to be for the eight years on probation, but . . . it was a bunch of other things that" were included in the plea. The Petitioner characterized the "other things" as being in "the past," and he declined to discuss them further.

The Petitioner agreed that at the time he pled guilty, he had seen the surveillance recording from inside the store but had not seen the recording from outside the store. When asked whether he reviewed the victims' police statements, the Petitioner responded that he did not know who the victims were, that defense counsel told the Petitioner the victims' names, and that counsel conveyed that the victims claimed the Petitioner robbed them. The Petitioner recalled counsel's telling him that the victims described the robber as a "black male with a black shirt and some black pants." The Petitioner noted that the robbery occurred in a high-crime area, that he had "distinctive features," and that the victims' description was too general to be able to identify him.

The Petitioner testified that he accepted the plea offer because the prosecutor had "a reputation" and that he felt the prosecutor was doing him a "big favor" by offering him twelve years at eighty-five percent. The Petitioner stated that he cared for his children, but not for the four mothers of his children, and that the prosecutor "[s]aved [his] life" by enabling him to go to prison but "still have enough youth to go down there and make it home." The Petitioner said that he would "never throw [the prosecutor] under the bus" and that he thanked her after the plea hearing for allowing him to avoid a life sentence in federal prison.

-4-

The Petitioner testified that defense counsel advised him to accept the plea agreement. The Petitioner stated that during his last meeting with counsel, counsel conveyed the twelve-year offer; the Petitioner was reluctant to accept it and expressed a wish to proceed to trial; and counsel told the Petitioner that he would withdraw from the case if the Petitioner went to trial. The Petitioner stated that he did not have much money but that he felt he had a "better chance" with a retained attorney rather than a public defender; he agreed that the prospect of counsel's quitting influenced his decision to accept the plea.

The Petitioner testified that defense counsel told the Petitioner's wife and his mother-in-law different things than he told the Petitioner, but he did not specify what they were told. The Petitioner noted that his wife and mother-in-law were "not literate to the legal system." When asked whether he would have accepted the plea offer if he had seen the outside surveillance recording, the Petitioner responded that he had never seen it, and he expressed skepticism that it existed. He said, though, that counsel sent the recording to the Petitioner's "girl."

The Petitioner affirmed that he understood the consequences of the post-conviction court's vacating his plea agreement, including the possibility that the federal government could pursue a firearm charge against him and that the trial court could order his new sentence to run consecutively to his violation of probation. The Petitioner noted, "[W]ithout a gun, how can [they] prosecute me with a gun charge?" He stated that he did not know what the State's evidence was and that he never saw his "motion of discovery." The Petitioner requested that the post-conviction court reinstate his original charges.

On cross-examination, the Petitioner testified that in his pro se petition, he claimed to have been threatened by the State before his plea; he explained that the threat to which he referred was the prospect of a life sentence. When asked whether he committed the robberies or used a gun, the Petitioner responded that he did not remember the relevant events because he had paranoid schizophrenia. He noted again that no gun was in evidence. He acknowledged that because of his criminal history, he was a Range II offender and that the range of punishment for his aggravated robbery convictions was between twelve and twenty years.

The Petitioner testified that he did not know that because he had entered an "information plea," he was not entitled to discovery. The Petitioner acknowledged the prosecutor's statement that defense counsel obtained copies of the surveillance recordings "before he was entitled to them." The Petitioner agreed that when he pled guilty, he understood the terms of the plea agreement, that he was happy with the plea agreement, and that after he went to prison, he filed the post-conviction petition because he wanted to go home and see his children.

Defense counsel testified that after he began representing the Petitioner, they discussed the witnesses and the Petitioner's wish to obtain the surveillance recordings in order to "make a more accurate plea." The State subsequently agreed to provide counsel with the surveillance recordings. Counsel stated that the Petitioner instructed him to show the surveillance recordings to his wife so that she could relay their contents to the Petitioner. The Petitioner's wife viewed the recordings in counsel's office. Upon questioning by the post-conviction court, counsel agreed that the Petitioner instructed him to show the recordings to his wife and not to him. The Petitioner interjected at this point to ask why he would say such a thing, and he stated that his wife never saw the recordings.

Defense counsel testified that in the surveillance recordings, which reflected camera angles inside and outside the market, the Petitioner entered the market, bought beer and cigarettes, left the store and returned to his car, drove away, came back and parked, exited his car while holding a gun, brandished the gun, walked to the victims' car, and held his hand out. The victim handed him their cell phones, and the Petitioner returned to his car and drove away. The remainder of the recordings showed the victims' running inside the market and writing down a license plate number. Counsel affirmed that the Petitioner was recognizable in the recordings. Counsel said that he described the recordings' contents to the Petitioner.

Defense counsel testified that he also interviewed one of the victims, who told him that she recognized the Petitioner because they lived in the same apartment complex. Counsel did not remember whether the victims gave written police statements. Counsel stated that he discussed with the Petitioner that one of the victims could identify him. He noted that the State's investigator spoke to both victims.

Defense counsel testified that when he discussed pleading guilty with the Petitioner, he considered "the whole" of what the Petitioner faced. Counsel explained that as a Range II offender, the Petitioner faced a sentence of twelve to twenty years on each count, and that federal charges could result in either a five-year mandatory minimum or a range of fifteen years to life. Counsel noted that the aggravated robbery sentences could have been ordered to be served consecutively. Counsel agreed that the eventual plea agreement included a declination to prosecute from the federal authorities, a minimum sentence of twelve years on each count, and concurrent service of both counts and the probation violation. In counsel's opinion, the agreement "saved [the Petitioner] at least" twenty-seven years. Counsel stated that although the Petitioner was receptive to the plea offer, he inquired about the possibility of probation. Counsel said that he conveyed to the Petitioner that with a Class B felony, he was not eligible for probation.

Defense counsel testified that the State never recovered a firearm in the Petitioner's case; he did not know whether the victims' cell phones were ever recovered. Counsel denied telling the Petitioner that he would withdraw if the Petitioner chose to go to trial.

Counsel stated that he told the Petitioner that he did not "see a defense" to be pursued at trial given the evidence. Counsel denied that the Petitioner expressed any reservations about accepting the plea offer at the time he pled guilty.

The post-conviction court made oral findings of fact and conclusions of law. The court found that defense counsel offered to show the Petitioner the surveillance recordings and that the Petitioner asked counsel to instead show them to his wife. The court noted that this request corroborated the Petitioner's testimony that he did not trust his own memory and that the Petitioner did not remember committing the crime. The court found that counsel obtained "about the best result you [could] get for that charge" and that the Petitioner "couldn't have gotten much better service from a lawyer." The court concluded that the evidence did not indicate that the Petitioner was deprived of any constitutional right, noting that the trial court performed its customary and "thorough" plea colloquy to establish that the Petitioner understood what he was doing. The court stated, "If this was an information, he obviously knew there was no . . . discovery that he had seen." The court concluded that the Petitioner had not established by clear and convincing evidence that a constitutional right was violated, and it dismissed the petition. The Petitioner timely appealed.

ANALYSIS

The Petitioner contends that he entered an involuntary and unknowing guilty plea as a result of receiving the ineffective assistance of defense counsel, arguing that counsel failed to communicate the victims' identity and show the Petitioner all of the surveillance recordings. The Petitioner also indicates that he was confused about why he was facing prosecution for a firearm-related offense when "no firearm was recovered from him or in evidence (other than the images from the videos)." The Petitioner argues that as a result of this lack of communication, he did not receive "sufficient information about the State's evidence to make a knowing and voluntary decision [to plead guilty], despite that information being in the possession" of counsel. The State responds that counsel was not deficient, that the Petitioner was not prejudiced, and that the guilty plea was knowingly and voluntarily entered.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. However, we review

the post-conviction court's application of the law to its factual findings de novo with no presumption of correctness.  Id. at 457.

Criminal defendants are constitutionally guaranteed the right to effective assistance of counsel.  Dellinger, 279 S.W.3d at 293 (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)).  When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial.  Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 688-89.  Prejudice requires proof of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim."  Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).  The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution.  State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

As to the prejudice prong, in the context of a guilty plea, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea.  Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing the voluntariness of a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S .W.2d 337 (Tenn. 1977).  See State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999).  In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242.  Similarly, our supreme court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea. Pettus, 986 S.W.2d at 542.  A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).  In order to find that the plea was entered "intelligently" or "knowingly," Boykin requires that the trial court "canvass[ ] the matter with the accused to make sure he has a full

understanding of <u>what the plea connotes</u> and of <u>its consequences</u>." <u>Blankenship</u>, 858 S.W.2d at 904 (quoting <u>Boykin</u>, 395 U.S. at 244) (emphasis in original).

The courts have recognized that "the decision to plead guilty is often heavily influenced by the defendant's appraisal of the prosecution's case against him and the likelihood of securing leniency through a plea bargain." <u>See</u> <u>id.</u> (quoting <u>Brown v. Perini</u>, 718 F.2d 784, 786 (6th Cir. 1983)). There are a number of circumstantial factors that should be considered when examining the voluntariness of a guilty plea. <u>Id.</u> These factors include (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. <u>Id.</u> at 904-05.

The post-conviction court found that counsel obtained copies of the State's evidence, that counsel reviewed the recordings and explained their contents to the Petitioner, and that counsel showed the recordings to the Petitioner's wife at the Petitioner's request. The court found that counsel's testimony in this regard corroborated the Petitioner's testimony regarding the Petitioner's mental illness and its negative effect on his memory. Counsel also testified that the Petitioner's face was identifiable in the surveillance recordings, as was his brandishing a handgun at the victims, and that counsel communicated these facts to the Petitioner. We note that the Petitioner acknowledged during his testimony that he had seen the first surveillance recording during his police interview, that counsel described the surveillance recordings to him, and that counsel showed the Petitioner's wife the recordings.

The post-conviction court also found that defense counsel interviewed one of the victims and conveyed to the Petitioner that she could identify him. The Petitioner himself testified that counsel told him the victims' identities and that they claimed he had robbed them. The Petitioner's skepticism of the victims' ability to identify him and how the State could prosecute him without a physical gun in evidence notwithstanding, his testimony was largely consistent with that of counsel when describing what evidence he and counsel discussed.

The post-conviction court noted that because the Petitioner had not been charged by indictment or presentment, only by information, he was not yet entitled to discovery and that counsel was nevertheless able to obtain the recordings from the State. The court found that the Petitioner "couldn't have gotten much better service from a lawyer" and concluded that counsel provided effective assistance. The record does not preponderate against the court's findings.

We note that although the Petitioner states in his argument, which is less than one page in total, that he was "primarily contemplating the potential sentencing he could face if he was convicted of the robberies and of possessing the firearm, in state and federal proceedings, rather than knowingly evaluating the strength of the State's evidence of guilt," the Petitioner does not indicate why viewing the exterior surveillance recordings would have caused him to reject the plea offer. He states only that counsel had reviewed the available evidence, "[y]et the [Petitioner] had not seen all of the video files." The Petitioner was informed that the recording clearly showed his face and his brandishing a gun at the victims, which according to counsel was an accurate description. If the Petitioner had viewed all of the recordings personally, it does not appear that anything therein would reasonably have led him to believe he would be acquitted at trial. The record reflects, and the post-conviction court found, that counsel provided the Petitioner with a comprehensive summary of the overwhelming evidence against him.

We also note that the potential sentencing in this case was an important consideration, that the Petitioner faced a maximum sentence of twenty years in each aggravated robbery count, that the Petitioner could have been subject to consecutive sentencing, and that the federal authorities could also have prosecuted him on a firearm charge. In contrast, the plea agreement counsel negotiated allowed the Petitioner the opportunity to be released from prison in enough time for him to continue a relationship with his children. As the Petitioner acknowledged when he expressed his gratitude to the prosecutor, the plea agreement was very beneficial to him. The Petitioner has not proven that counsel's performance was deficient or that he was prejudiced.

Relative to whether the Petitioner entered a knowing and voluntary guilty plea, the post-conviction court correctly found that a thorough plea colloquy was conducted in the Petitioner's case and that the Petitioner affirmed under oath that he understood the rights he was waiving and the consequences of his plea and that he was satisfied with counsel's representation. The Petitioner had the opportunity to ask questions of the trial court and declined. The Petitioner testified that on the day of the plea, he understood the plea agreement and that he was happy with it. He stated that after going to prison, he filed the post-conviction petition out of a desire to see his children. The record does not reflect that the Petitioner's plea was unknowing or involuntary, and he is not entitled to relief on this basis.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____

D. KELLY THOMAS, JR., JUDGE